**Electronically Filed
Supreme Court
SCWC-14-0001352
27-JUN-2018
07:57 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

DANIEL IBBETSON,
Respondent/Plaintiff/Counter-Defendant/Appellee,

vs.

DEAN KAIAWE,
Petitioner/Defendant/Counterclaimant/Third-Party
Plaintiff/Appellant,

vs.

HAWAII CONFERENCE FOUNDATION, a Hawaii nonprofit corporation,
and DEPARTMENT OF PUBLIC WORKS, COUNTY OF HAWAII, a municipal
corporation, Respondents/Third-Party Defendants/Appellees.

SCWC-14-0001352

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001352; CIV. NO. 06-1-015K)

JUNE 27, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

In 2003, Respondent/Plaintiff/Counter-Defendant/

Appellee Daniel Ibbetson (Ibbetson) purchased a 0.722-acre parcel

of land from Respondent/Third-Party Defendant/Appellee Hawaii
Conference Foundation (HCF).  Two grave sites were located on the
property.  Over the next few years, Ibbetson built a single-
family residence on the property and began operating a bed and
breakfast out of the residence.

In 2006, Ibbetson filed a complaint against
Petitioner/Defendant/Counterclaimant/Third-Party Plaintiff/
Appellant Dean Kaiawe (Kaiawe) alleging that Kaiawe trespassed
upon his property and destroyed his plants and landscaping.  He
sought, inter alia, a preliminary injunction to preclude Kaiawe
from entering his property in the future.

Kaiawe filed a counterclaim against Ibbetson, arguing
that Ibbetson's property had been dedicated for exclusive use as
a cemetery, and that he had the right to enter upon the property
to visit his great-grandmother's burial site.  Kaiawe requested a
declaratory judgment clarifying whether Ibbetson validly owned
the property, to what use the property could be put, and the
nature and extent of Kaiawe's and Ibbetson's rights and
responsibilities with respect to the property.  He also sought to
quiet title under Hawaiʻi Revised Statutes (HRS) Chapter 669.

Ibbetson filed a motion for summary judgment as to all
counts in Kaiawe's counterclaim.  The Circuit Court of the Third
Circuit (circuit court) granted Ibbetson's motion for summary

2

judgment.  The Intermediate Court of Appeals (ICA) affirmed.

On certiorari, we are presented with two questions for review:  (1) whether the ICA erred in holding that the circuit court correctly granted summary judgment in favor of Ibbetson on Kaiawe's claims that the Property had been dedicated for exclusive use as a cemetery pursuant to common law and/or statute; and (2) whether the ICA erred in holding that Kaiawe was not entitled to relief under HRS Chapter 669.

For the reasons stated below, we hold that the ICA did not err in affirming the circuit court's ruling granting summary judgment in favor of Ibbetson with respect to Kaiawe's statutory dedication claim, and that the ICA correctly held that Kaiawe was not entitled to relief under HRS Chapter 669.  However, we conclude that the ICA erred in determining that the circuit court properly granted summary judgment in favor of Ibbetson on Kaiawe's common law dedication claim.

Accordingly, we affirm in part and vacate in part the ICA's November 30, 2017 judgment on appeal, which affirmed the circuit court's November 13, 2014 amended final judgment, and remand the case to the circuit court for further proceedings consistent with this opinion.

## I.  BACKGROUND

This case concerns a 0.722-acre parcel of land in the

South Kona district on the island of Hawaiʻi (the Property). Surveys conducted of the Property refer to it as the "Hoikeana Cemetery." From the early 1900s to the 1950s, a church known as the Hoikeana Church was located next to the Property.

Currently, there are two grave sites located on the Property, Grave Site A and Grave Site B. Both grave sites are separately enclosed by stone walls. Grave Site A, located on the northeastern side of the Property, encompasses an area of 4,788 square feet and contains identified burial plots. Grave Site B, located across from Grave Site A on the northwestern side of the Property, encompasses an area of 2,316 square feet and contains unidentified graves.

The Property's recorded chain of title began on February 2, 1915, when Mikala Kaiawe (Mikala), in consideration of $1, conveyed the Property to the Board of the Hawaiian Evangelical Association (Association). Mikala is Kaiawe's great-grandmother. The deed effecting this conveyance (1915 Deed) contains the following metes and bounds description of the Property:

> Commencing at the Northeast corner of this piece on the old government trail, a little makai[1] of the present government road, adjoining Kaohe 4, and running thence along the line between Kaohe 4 and

---

[1] In Hawaiian, "makai" means "ocean." See Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary at 225 (2d ed. 1986). Thus, when used directionally, "makai" means "towards the ocean." See id.

4

> Kaohe 5, 200 feet in a westwardly direction to a stake and stone pile; thence southwardly to a stake and stone pile 120 feet; thence eastwardly to a stake and stone pile 275 feet; and thence northwardly . . . to point of commencement, and containing about three-fourths of an acre, more or less, and being described in R.P. Number 2358 to Huakonou.

The 1915 Deed also contains the following habendum clause:[2] "To have and to hold the said premises, with the appurtenances, so that it may be used as a cemetery, to the said Board of the Hawaiian Evangelical Association, its successors and assigns, forever."

In 1952, the Association changed its name to Hawaiian Evangelical Association of Congregational-Christian Churches. Then, in 1963, Hawaiian Evangelical Association of Congregational-Christian Churches later changed its name to Hawaii Conference of the United Church of Christ.

On September 2, 1983, Hawaii Conference of the United Church of Christ, in consideration of $10, conveyed the Property to HCF by quitclaim deed (1983 Deed). The 1983 Deed contained the following habendum clause: "TO HAVE AND TO HOLD the same, together, with the improvements thereon and all rights, easements, privileges and appurtenances thereunto belonging or appertaining, unto the Grantee, its successors and assigns, for

---

[2] A habendum clause is defined as: "The part of an instrument, such as a deed or will, that defines the extent of the interest being granted and any conditions affecting the grant." Black's Law Dictionary 825 (10th Ed. 2014).

cemetery purposes only, forever." The 1983 Deed was recorded with the State of Hawaiʻi Bureau of Conveyances on October 11, 1983.

In February 2003, Ibbetson and HCF executed a Deposit Receipt Offer and Acceptance (DROA). According to the DROA, HCF agreed to convey Ibbetson the Property in exchange for a payment of $50,000.

An addendum attached to the DROA reserved rights of access to Grave Site A and Grave Site B in favor of HCF and those with relatives buried on those grave sites. Under the addendum, HCF and relatives of individuals buried in Grave Site A and Grave Site B had a right to access the Property to visit, maintain, and care for grave sites. However, the addendum limited visits to Grave Site A to daylight hours, and required individuals seeking to visit Grave Site B to notify Ibbetson in advance of their intent to visit, coordinate with Ibbetson on visitation logistics, and provide verification of their relationship to the person buried on Grave Site B. Further, the addendum limited the extent to which subsequent internments could take place on the grave sites, and limited Ibbetson's responsibilities and liabilities regarding the maintenance and care of the grave sites, as well as the access ways leading to and from the grave sites.

On March 17, 2003, HCF executed a limited warranty deed conveying the Property to Ibbetson (2003 Deed). The 2003 Deed included the limitations and conditions set forth in the addendum attached to the DROA. Moreover, an exhibit attached to the 2003 Deed stated that the Property was subject to, inter alia: "Restrictions imposed by law regarding the sale and disposition of said land or a place within any mausoleum or columbarium erected thereon resulting from the use or dedication of said land for cemetery purposes." The 2003 Deed was recorded with the State of Hawaiʻi Board of Conveyances on March 21, 2003.

After obtaining the requisite permits from the County of Hawaiʻi Department of Public Works-Building Division, Ibbetson constructed a three-bedroom, three-bathroom single-family residence with an accompanying in-ground swimming pool on the Property sometime between 2003 and 2005.

On July 15, 2005, Ibbetson applied for a Special Permit from the County of Hawaiʻi Planning Commission (Planning Commission) to operate a two-unit bed and breakfast establishment out of the aforementioned single-family residence. Kaiawe was granted standing to intervene in a contested case hearing regarding Ibbetson's Special Permit application. In his written testimony, Kaiawe averred that his great-grandmother, Mikala, was buried in Grave Site B, and that as a relative of a person buried

7

on the Property, he objected to Ibbetson's construction of a residence and operation of a bed and breakfast facility on the Property because he believed that the Property could only be used as a cemetery. Following a two-day contested case hearing, the Planning Commission approved Ibbetson's application for a Special Permit, subject to certain conditions.[3]

## A.    Circuit Court Proceedings

On January 26, 2006, Ibbetson filed a complaint against Kaiawe in circuit court.[4] Ibbetson's complaint alleged that, without his permission, Kaiawe entered the Property with three other persons and damaged and removed bushes, hedges, and other landscape materials he had planted on Grave Site B. Ibbetson claimed that when he asked Kaiawe to stop damaging the landscaping and to leave the premises, Kaiawe "responded by yelling that it didn't make any difference because [Ibbetson's] house was going to be gone soon and that the land was his land and his family's land[.]" Ibbetson stated that Kaiawe and the others left about an hour later and threatened to return.

Based on the allegations in his complaint, Ibbetson

---

[3]    For example, the Planning Commission's decision required that Ibbetson preserve the existing cemeteries located on the Property, and mandated that Ibbetson "maintain the perpetual non-exclusive easement and right of entry over and for the visitation, maintenance, and care of the existing graves located within Grave Site 'A' and Grave Site 'B' identified as Easement '1' within [his] deed to the Property."

[4]    The Honorable Elizabeth E. Strance presided.

requested a preliminary injunction enjoining Kaiawe and anyone associated with him "from coming to the subject property, except in accordance with the terms of the Limited Warranty Deed." He also requested a temporary restraining order prohibiting Kaiawe and his associates from entering the Property and/or destroying his personal property thereon until a decision was rendered on his request for a preliminary injunction, and sought money damages for the damages that he sustained as a result of Kaiawe's trespass on the Property.

In his answer to Ibbetson's complaint, Kaiawe admitted that he entered the Property, that he visited Grave Site A and Grave Site B, and that "he and others cut Christmas Berry trees growing within Grave Site B." He denied all of the other allegations.

Kaiawe's answer also raised several affirmative defenses. He argued that Ibbetson lacked standing to bring suit against him, alleging that Ibbetson did not own the Property, as HCF did not have the authority to sell the Property to Ibbetson. Further, he alleged that the Property was "subject to limitation and restriction that it be used for cemetery purposes and for no other uses," and that he, as a descendant of a person buried on the Property, had an unrestricted right to access the Property in order to visit and maintain his relative's grave sites.

9

Kaiawe also filed a counterclaim against Ibbetson. His allegations in his counterclaim were the same as the allegations in his answer to Ibbetson's complaint.  Based upon these allegations, Kaiawe argued that "[a] real and actual controversy exists between [Ibbetson] and [Kaiawe] as to the ownership and use of [the Property]."  Thus, Kaiawe requested "a declaration of the parties' respective rights and obligations under [HRS] Chapter 632 . . . as to the ownership and use of [the Property]."  And, "to the extent that title to [the Property] must be determined," Kaiawe sought a "determination of the parties' rights and interest in [the Property]" under HRS Chapter 669.

On October 27, 2006, Kaiawe filed a third-party complaint against HCF.  Kaiawe alleged that as a result of Ibbetson's lawsuit against Kaiawe, bona fide controversies existed as to:  (1) HCF's authority to convey the Property to Ibbetson via the 2003 Deed; (2) the present ownership of the Property; (3) the uses to which the Property could be put; and (4) Kaiawe's, Ibbetson's, and HCF's rights and obligations with respect to the Property.  Therefore, Kaiawe sought a declaratory judgment resolving these issues.

On November 25, 2009, Ibbetson filed a motion for summary judgment as to all counts in Kaiawe's counterclaim.

10

Ibbetson raised two arguments in support of his motion for summary judgment.  First, Ibbetson asserted that Kaiawe lacked standing to enforce the 1983 Deed, which contained the language that, according to Kaiawe, established that the Property could only be used for cemetery purposes.  Second, he stated that "the only basis for [Kaiawe's] claim of title . . . under [HRS] Chapter 669 would be that [the Property] is no longer being used as a cemetery and therefore, it should revert to the heirs of Mikala Kaiawe, of whom Defendant Kaiawe is one."  Relying upon Midkiff v. Castle & Cooke, Inc., 45 Haw. 409, 368 P.2d 887 (1962), Ibbetson argued that the habendum clause in the 1915 Deed "can be construed at most as a covenant or a mere statement on the part of Mikala Kaiawe" because "[t]he language used does not indicate an intent to qualify or limit the estate granted by the deed."  Thus, Ibbetson asserted that inasmuch as Kaiawe lacked standing to enforce the 1983 Deed, and the habendum clause in the 1915 Deed did not restrict the Property's use to cemetery purposes, he was entitled to summary judgment on all counts of Kaiawe's counterclaim.

On January 7, 2010, Kaiawe filed written objections to Ibbetson's motion for summary judgment.  Kaiawe countered that the habendum clause in the 1915 Deed was not a general purpose clause.  Rather, to Kaiawe, "Mikala's language is more specific

11

to the parcel's actual use and is a limitation on title."
Kaiawe contended that the 1983 Deed "confirms and ratifies the
original limitation in Mikala's 1915 Deed and the Board of
Hawaiian Evangelical Association's (as renamed) commitment to
that limitation." Thus, Kaiawe argued, by operation of the
habendum clause in the 1915 Deed, HCF could not sell the Property
to Ibbetson, and therefore, Ibbetson "took nothing under the 1983
Deed."

Kaiawe also argued that the Property was dedicated for
use as a cemetery under common law and by operation of HRS § 441-
17.[5] Thus, Kaiawe asserted that because the Property had been
dedicated for exclusive use as a cemetery, Ibbetson was not
allowed to build a residence on the Property or operate a
commercial bed and breakfast facility out of said residence. He
maintained that as a descendant of an individual buried on the
Property, he had the right to enforce such restrictions on the
Property's use.

---

[5]     HRS § 441-17 (1993) provides:

All existing cemeteries or parts thereof which shall
have been lawfully established, and for which a map or
plat substantially similar to that required by section
441-3 has been filed or recorded in the bureau of
conveyances or in the office of the assistant
registrar of the land court, shall be deemed to have
been dedicated as of [July 1, 1967], to the same
extent and with like effect as provided in this
chapter.

(Brackets in original.)

12

One of the exhibits attached to Kaiawe's objections was an excerpt from the transcript of the hearing on Ibbetson's application for a Special Permit to operate a bed and breakfast facility, at which Pastor Nancietta Haʻalilio (Pastor Haʻalilio) testified. Pastor Haʻalilio was affiliated with the Pukaʻana Congregational Church, a sister church to the Hoikeana Church located across the highway from the Property. In brief, she testified that: (1) she and her family maintained the cemeteries on the Property from the 1950s through the 1980s, long after the Hoikeana Church congregation had dissipated; (2) she and Kaiawe had family members buried on the Property; (3) there were "quite a few" other individuals besides her own family members and those known to her buried in Grave Site A; (4) there was no "master list" of who was buried on the Property; and (5) there was no formal system according to which people were buried on the Property.

On January 11, 2010, Ibbetson filed a reply memorandum in support of his motion for summary judgment. Briefly stated, Ibbetson argued: (1) the Property was not statutorily dedicated for exclusive use as a cemetery pursuant to HRS § 441-17; (2) the Property was not dedicated for use by the public as a cemetery under common law because "[t]he Hoikeana Cemetery was for members of the Hoikeana Church and their families, not the general

13

public"; and (3) the habendum clause in the 1915 Deed did not clearly reflect Mikala's intent that the Property should revert back to her and her heirs if the Property was used for non-cemetery purposes.[6]

A hearing on Ibbetson's motion for summary judgment was held on January 15, 2010. There, the circuit court orally granted Ibbetson's motion for summary judgment:

> The Court having considered [Ibbetson's] motion for summary judgment as to all counts of the counterclaim filed February 10, 2006, the Court finds there is no genuine material issue of fact, and that [Ibbetson] is entitled to judgment as a matter of law.
>     The Court's specifically finding that the [1915 Deed] did not create a fee simple determinable[,] that [Kaiawe] does not have standing to enforce the [1983 Deed], and that the cemetery was not a dedicated cemetery and, therefore, is not subject to the restrictions set forth in [HRS] Chapter 441.

On April 14, 2010, the circuit court entered a written order granting Ibbetson's motion for summary judgment. Therein, the circuit court ruled that:

> The Court being satisfied that it has jurisdiction over all parties and of the subject matter of this case, and all of the files and records in this action, and good cause appearing therefore, hereby finds and concludes as a matter of law that: (1) Defendant Kaiawe has no standing to enforce the September 2, 1983, Deed from the Hawaii Conference of the United Church of Christ to the Hawaii Conference Foundation; (2) that neither the February 2, 1915, deed from Mikala Kaiawe to the Hawaiian Evangelical Association or the September 2, 1983, Deed from the Hawaii Conference of the United Church of Christ to the

---

[6]     HCF also filed a statement of position on Ibbetson's motion for summary judgment on January 14, 2010. HCF echoed Ibbetson's position that Kaiawe lacked standing to enforce the 1983 Deed, and that the language in the habendum clause of the 1915 Deed was "merely precatory and evidences only a suggested permissible, not mandatory, use of [the Property]."

> Hawaii Conference Foundation contain language limiting the conveyance in such a manner that the deeds could be construed as conveying anything other than a fee simple interest in the subject property to the Grantee(s); and (3) the property conveyed to Plaintiff Ibbetson by that Limited Warranty Deed dated March 17, 2003, was never dedicated as a public cemetery.

On September 19, 2012, Ibbetson, Kaiawe, and HCF filed a stipulation for entry of final judgment. In their stipulation, the parties stated that the circuit court's order granting Ibbetson's motion for summary judgment operated as the "law of the case" and determined the other issues raised in the case. Specifically, the parties stated that the circuit court's order resolved: (1) the 2003 Deed's legal effect; (2) the legal ownership of the Property; (3) HCF's legal authority to deliver the 2003 Deed; and (4) the permitted uses to which the Property may be put.

Accordingly, the parties stipulated that with respect to the complaint and counterclaim, judgment should be entered in favor of Ibbetson. The parties stipulated that Ibbetson should be declared the owner of the Property, subject to the restrictions, easements, limitations, and conditions described in the 2003 Deed and subject to his bed and breakfast permit; consequently, Ibbetson would allow Kaiawe to visit Grave Site B in the manner provided in the 2003 Deed. The parties also stipulated that the third-party complaint against HCF would be dismissed.

15

The circuit court entered its final judgment on November 5, 2012. The final judgment entered judgment in favor of Ibbetson and against Kaiawe on the complaint and counterclaim. Furthermore, the final judgment declared that Ibbetson was the owner of the Property, subject to the restrictions, easements, limitations, and conditions described in the 2003 Deed and subject to the permit allowing him to operate a bed and breakfast out of his residence, and that Kaiawe had the right to visit Grave Site B in accordance with the terms set forth in the parties' stipulation. Additionally, the final judgment entered judgment in favor of HCF on the third-party complaint; the third-party complaint was then dismissed.

Kaiawe filed a notice of appeal on December 5, 2012. However, on May 8, 2013, the ICA dismissed Kaiawe's appeal for lack of appellate jurisdiction based upon its determination that the circuit court's final judgment was not final and appealable.

The circuit court entered an amended final judgment on November 13, 2014. The amended final judgment entered judgment in favor of Ibbetson and against Kaiawe on all counts of the complaint and counterclaim, and resolved the trespass claim in the complaint by providing as follows: "Kaiawe will not enter the area described as Grave Site B except in compliance with the restrictions, easements, limitations and conditions described in

16

the [2003 Deed], nor will he deface or destroy any real or personal property on the site at the time of the entry or visitation."  The amended final judgment also entered judgment in favor of HCF on the third-party complaint; the third-party complaint was then dismissed with prejudice.

## B.   ICA Proceedings

On appeal, Kaiawe asserted, inter alia,[7] that the circuit court erred in ruling that there was no genuine issue of material fact as to whether the Property had been dedicated for public use as a cemetery.  He raised two arguments in support of his position that the record reflected that the Property had been dedicated for use by the public as a cemetery.

First, Kaiawe contended that the record supported that the Property had been dedicated for public use as a cemetery

---

[7]     Kaiawe also contended that the circuit court "erred when it concluded that the Defendant-Appellant Kaiawe lacked standing" to enforce the 1983 Deed.  Kaiawe argued that the circuit court "misinterpreted the significance of the 1983 Deed" to the extent that, in his view, the 1983 Deed "reflected the Association's confirmation (admission) of its past dedication of [the Property] to a cemetery use, its desire to continue that use into the future and its successor's ([HCF]) covenant to do so."
     The ICA observed that "Kaiawe does not assert, argue, or otherwise support a claim that he has standing to enforce the alleged restrictions of the 1983 Deed per se."  Rather, the ICA noted that Kaiawe "submitt[ed] that the Circuit Court misinterpreted the significance of the 1983 Deed," as he "introduced the 1983 Deed as evidence of the prior dedication of the [Property]," not as a means of divesting Ibbetson of title to the Property.  Thus, because it "ha[d] no basis to do otherwise," the ICA held "that the Circuit Court did not err in concluding that Kaiawe has no standing to enforce the 1983 Deed."
     On certiorari, Kaiawe does not challenge the ICA's holding on this point.  Ibbetson's response does not raise the issue.  Thus, we do not address it.  See Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 40.1(d).

17

under common law.  Relying upon Smith v. Wilder, 6 Haw. 228 (Haw.
Kingdom 1879), and Barker v. Hazel-Fain Oil Co., 219 S.W. 874
(Tex. Civ. App. 1920), Kaiawe argued that the habendum clause in
the 1915 Deed evinced Mikala's intent to dedicate the Property
for public use as a cemetery, and that the public's subsequent
use of the Property in that manner effected the common law
dedication.  Kaiawe asserted that the habendum clause in the
1983 Deed further illustrated Mikala's intent to dedicate the
Property for use by the public as a cemetery, as the clause
reflected the Association's understanding that the Property had
been dedicated to a cemetery use, and that it wanted its
successor to honor the dedication in the future.

Second, Kaiawe argued that the record supported that
the Property had been dedicated to cemetery use by statute.  He
asserted that the requirements for statutory dedication under HRS
§ 441-17 were met in this case because the metes and bounds
description of the Property attached to the 1915 Deed was
"'substantially similar' to the survey map referred to in" HRS §§
441-17 and 441-3.  (Quoting HRS § 441-17.)  As a consequence of
being statutorily dedicated as a cemetery under HRS § 441-17,
Kaiawe reasoned that the Property must be used "'exclusively' for

18

cemetery purposes" pursuant to HRS § 441-6.[8]

Ibbetson countered that the record did not establish "that there has been any common-law dedication for the public to be buried on the Property."  Citing Hill v. Towson Realty, 157 A.2d 796 (Md. 1960), Ibbetson contended that the habendum clause in the 1915 Deed did not evince Mikala's intent to dedicate the Property for public use as a cemetery.  In particular, he reasoned that while the clause stated that Mikala conveyed the Property "so that it may be used as a cemetery," the clause did not clearly suggest that the Property was to be used by the public as a cemetery.

Moreover, Ibbetson appeared to argue that the metes and bounds description attached to the 1915 Deed did not satisfy the requirements set forth in HRS § 441-17 because the description was not a "map or plat showing the sections, blocks, plots, avenues, walks, or other subdivisions, with descriptive names, initials, or numbers that uniquely identify each plot."  (Citing HRS §§ 441-17 and 441-3.)

---

[8]     HRS § 441-6 (1993) states:

Upon the recording or filing of a map or plat and certificate of dedication pursuant to sections 441-2 and 441-3, the dedication is complete with respect to all property or parts thereof which are described or depicted in or on both the certificate of dedication and map or plat for all purposes and thereafter the property shall be occupied and used exclusively for cemetery purposes.

On October 31, 2017, the ICA issued a memorandum opinion, in which a majority of the court affirmed the circuit court's amended final judgment.  Briefly stated, the ICA majority held that:  (1) Kaiawe was not entitled to relief by way of a quiet title action under HRS Chapter 669; (2) the circuit court correctly granted summary judgment in favor of Ibbetson on Kaiawe's common law dedication claim; and (3) the circuit court correctly granted summary judgment in favor of Ibbetson on Kaiawe's statutory dedication claim.

The ICA majority first addressed whether the circuit court erred in ruling against Kaiawe on his quiet title claim under HRS Chapter 669.  The ICA majority observed that HRS § 669-1(a), read alongside Hawaiʻi case law, established that a quiet title plaintiff must prove that he or she has title to the disputed land.  The ICA majority then noted that "Kaiawe has not raised an adverse possession claim, and has not pled or provided any evidence of superior title," that the 1915 Deed did not "contain any reservation of interest or right of reversion" in favor of Kaiawe, and that "Ibbetson submitted evidence of unbroken title from Mikala Kaiawe to the Association to HCF to him."  Based on the foregoing, the ICA majority held that the circuit court did not err when it granted summary judgment in favor of Ibbetson on Kaiawe's quiet title claim.

20

Next, the ICA majority analyzed whether the circuit court erred in granting summary judgment in favor of Ibbetson on Kaiawe's claim for declaratory relief, inasmuch as the circuit court ruled that there was no genuine issue of material fact as to whether the Property had been dedicated to use by the public as a cemetery.

The ICA majority rejected Kaiawe's argument that the record supported that the Property had been dedicated for public use as a cemetery pursuant to common law for several reasons. The ICA majority ruled that Smith "simply does not support the proposition that the dedicated use of part of a parcel as a cemetery or burial grounds evidences an implied dedication of the entirety of the property for use only as a cemetery." The ICA majority also reasoned that Barker did not support Kaiawe's claim because the habendum clause in the 1915 Deed did not "purport to dedicate the land as a public cemetery," and because "there is no evidence that [the Property] was open for burials of the public at large[.]"

Applying this court's decision in Midkiff to the facts in this case, the ICA majority held that the habendum clauses in the 1915 Deed and the 1983 Deed did not support that the Property had been dedicated for public use as a cemetery. The ICA majority ruled that the habendum clauses in the 1915 Deed and

21

FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

1983 Deed were mere expressions of the anticipated use of the Property, which did not indicate an intent "that less than a fee simple estate was being transferred."  Therefore, because Kaiawe did not "provide authority for the proposition that a deed's expression of anticipated use should be otherwise viewed as creating a common law servitude on the deeded property that is inconsistent with the estate that was conveyed by the deed," the ICA majority held that the habendum clauses in the 1915 Deed and 1983 Deed did not evince that the Property had been dedicated for exclusive use as a cemetery by the public.

Furthermore, the ICA majority held that Pastor Haʻalilio's testimony did not create a genuine issue of material fact as to whether the Property had been dedicated for public use as a cemetery.  The ICA majority determined that although her testimony confirmed that individuals were buried in both grave sites, her statements did not "otherwise support Kaiawe's claim of public dedication."

Therefore, the ICA majority held that the circuit court did not err in granting summary judgment against Kaiawe on his common law dedication claim.

The ICA majority also concluded that Kaiawe's argument premised upon statutory dedication was without merit.  The ICA majority ruled that "[t]he metes and bounds description in the

22

1915 Deed merely outlines the boundaries of the Property" and did not meet the requirements delineated in HRS § 441-17. Accordingly, the ICA majority held that the Property "was not deemed dedicated as a cemetery pursuant to HRS § 441-17."

Judge Lisa M. Ginoza filed a separate concurring and dissenting opinion. While she agreed with the majority that Kaiawe was not entitled to relief under HRS Chapter 669, and that the circuit court correctly granted summary judgment in favor of Ibbetson on Kaiawe's statutory dedication claim, Judge Ginoza dissented to the extent that she believed that there was a genuine issue of material fact as to whether the Property had been dedicated for public use as a cemetery under common law.

Judge Ginoza acknowledged that the 1915 Deed and 1983 Deed did not contain express language suggesting that the Property was to be used by the public as a cemetery. However, she also observed neither deed restricted the cemetery to the exclusive use of church members, and that "Mikala's intent can be implied from the public's use of the cemetery." And, Judge Ginoza highlighted that Pastor Haʻalilio's testimony suggested that "individuals beyond members of the church situated on or next to the Property were buried in the cemetery." Judge Ginoza posited that nothing in the record supported that "the cemetery was intended and used only for members of the Hoikeana Church."

23

Based on the foregoing, Judge Ginoza concluded: "Viewing the evidence in the record in a light most favorable to Kaiawe as the non-movant, as is required under the summary judgment standard, there is a genuine issue of material fact whether the cemetery was intended and utilized as a public cemetery."

The judgment on appeal was entered on November 30, 2017.

## II. STANDARDS OF REVIEW

### A. Motion for Summary Judgment

"On appeal, the grant or denial of summary judgment is reviewed de novo." Nuuanu Valley Ass'n v. City & Cty. of Honolulu, 119 Hawaiʻi 90, 96, 194 P.3d 531, 537 (2008). It is well-established that:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (brackets in original) (quoting Kahale v. City & Cty. of Honolulu, 104 Hawaiʻi 341, 344, 90 P.3d 233, 236 (2004)). And,

> where the non-movant bears the burden of proof at trial, a movant may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of the non-

24

> movant's claim, or (2) demonstrating that the non-
> movant will be unable to carry his or her burden of
> proof at trial.

Ralston v. Yim, 129 Hawai'i 46, 57, 292 P.3d 1276, 1287 (2013).

### III.  DISCUSSION

We construe Kaiawe's application for writ of certiorari to present two questions for review:  (1) whether the ICA erred in holding that the circuit court correctly granted summary judgment in favor of Ibbetson on Kaiawe's claims that the Property had been dedicated for exclusive cemetery use pursuant to common law and/or statute; and (2) whether the ICA erred in holding that Kaiawe was not entitled to relief pursuant to a quiet title action under HRS Chapter 669.[9]

### A.  Dedication

"Dedication" is defined as "[t]he donation of land or creation of an easement for public use."  Black's Law Dictionary 500 (10th ed. 2014).  It is well-settled that there are two primary means by which land may be dedicated for public use:

> Dedication of land for public use may be achieved
> either by statute or by common law.  Statutory
> dedication occurs when the statutory provisions are
> complied with.  Common law dedication is accomplished
> either expressly, as by deed, or impliedly, as by acts

---

[9]     Kaiawe's application for writ of certiorari does not comply with the requirements of HRAP Rule 40.1(d) insofar as it is twenty-three pages long.  HRAP Rule 40.1(d) (providing that "[t]he application shall not exceed 12 pages").  Nonetheless, in light of this court's long-standing policy of affording litigants the opportunity to have their cases heard on the merits where possible, we address the questions presented in Kaiawe's application on the merits.  Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012).

25

> and conduct which manifest an intent to give the
> property for public use.

Maui Ranch Estates Owners Ass'n v. Cty. of Maui, 6 Haw. App. 414,
421, 724 P.2d 118, 123 (1986) (citations omitted).

Kaiawe maintains that the circuit court erred in
concluding that there was no genuine issue of material fact as to
whether the Property had been dedicated for public use as a
cemetery under common law and by operation of statute. We
address each argument in turn.

**1.   Common Law Dedication**

"The common law has historically provided for the
dedication of private property for public use." Gold Coast
Neighborhood Ass'n v. State, 140 Hawaiʻi 437, 450, 403 P.3d 214,
227 (2017). "Common law dedication of private property is
'accomplished either expressly, as by deed, or impliedly, as by
acts and conduct which manifest an intent to give the property
for public use.'" Id. (quoting Maui Ranch, 6 Haw. App. at 421,
724 P.2d at 123).

In this case, Kaiawe does not seem to argue that the
Property was dedicated to public use expressly. Rather, Kaiawe
appears to rely upon a theory of implied dedication. With
respect to implied dedication, this court has explained:

> A common law dedication may be accomplished
> without any statement, written or spoken, for one who
> invites or merely permits the public to use his or her

26

> land for a long period may be held to have made an
> offer of implied dedication.  The rationale behind
> this theory is that the owner is estopped to deny
> permanent public access where he has admitted the
> public to use the land over a long time.  There must
> be an offer and acceptance of dedication.  When there
> is no express offer, the offer may be implied under
> the circumstances and acceptance may also be implied
> by the nature of the public use.  In other words, the
> duration and type of public use can raise both the
> presumption of the owner's intent (or offer) to
> dedicate land to public use, as well as constitute
> acceptance by the public.

In re Banning, 73 Haw. 297, 304-05, 832 P.2d 724, 728-29 (1992)

(internal quotation marks and citations omitted).

Furthermore, it is generally recognized that land can

be impliedly dedicated for public use as a cemetery:

> Land may be dedicated to the public for cemetery
> purposes.  In the absence of a statute, no particular
> form or ceremony is required to accomplish such a
> dedication.  The intention of the owner of the land to
> dedicate it for a public cemetery, together with the
> acceptance and use of the same by the public, or the
> consent and acquiescence of the owner in the long-
> continued use of his or her lands for such purpose,
> are sufficient. . . . While acceptance by the public
> is necessary to complete the dedication, such
> acceptance may be implied from acts and from the use
> of the land[.]

14 Am. Jur. 2d Cemeteries § 17 (2018) (footnotes omitted).

Kaiawe seems to argue that the ICA gravely erred in

concluding that the circuit court correctly granted summary

judgment in favor of Ibbetson on his common law dedication claim

for two reasons.  First, Kaiawe appears to argue that the ICA

misapplied Midkiff to the facts in this case, and therefore

erroneously concluded that the habendum clauses in the 1915 Deed

and 1983 Deed could not, by any means, constitute evidence of

27

Mikala's intent to dedicate the Property for public use as a cemetery. Second, Kaiawe appears to argue that the evidence in the record indicates that there is a genuine issue of material fact as to whether the Property was used by the public as a cemetery for a prolonged period of time. We conclude that both of his arguments are meritorious.

### a.     **Midkiff is distinguishable and inapposite**.

Relying on Midkiff, the ICA majority held that the habendum clauses in the 1915 Deed and 1983 Deed could not constitute evidence of Mikala's intent to dedicate the Property for public use as a cemetery. However, the facts in Midkiff are distinguishable from those in the present case. Therefore, we hold that Midkiff does not apply and the ICA majority's analysis is flawed insofar as it is premised thereon.

In Midkiff, the plaintiffs conveyed a parcel of land to Oahu Railway and Land Company (OR&L) by a deed executed in 1899. 45 Haw. at 410, 368 P.2d at 889. The deed contained a habendum clause, which stated: "To have and to hold . . . unto the said party of the second part its heirs successors and assigns forever for railway purposes." Id. at 411, 368 P.2d at 889. OR&L used the parcel for railway purposes until sometime in 1947. Id. The defendant was the successor in interest to OR&L's interest with respect to the parcel of land. Id. at 410, 368 P.2d at 889.

28

Upon learning that OR&L ceased using the parcel for railway purposes, the plaintiffs filed a complaint, arguing that by operation of the habendum clause in the deed, OR&L either received "an easement for a railroad" or "an estate in fee simple determinable . . . both of which terminated" when the parcel "ceased to be used for railway purposes." Id. at 412, 368 P.2d at 890. Therefore, the plaintiffs requested, inter alia, "to be declared the owners in fee simple" of the land. Id. The defendants countered that the deed unambiguously reflected that the grantors intended to convey an estate in fee simple absolute. Id. at 413, 368 P.3d at 890.

This court acknowledged that generally, habendum clauses cannot, by themselves, "operate to qualify or limit the estate granted by the deed, or, in other words, . . . operate to reduce what would otherwise be an estate in fee simple to an easement or an estate in fee simple determinable or other limited estate." Id. at 415, 368 P.2d at 891. The Midkiff court further explained:

> The principal reason given for this general rule is that the purpose clause is a mere expression or declaration or recital of the anticipated use by the grantee of the land and that such an expression or declaration or recital does not indicate an intent to qualify or limit the estate granted by the deed. In many of the decisions an additional reason for the rule is given that a grantor desiring to grant an easement or to convey a determinable fee or other limited estate can readily use appropriate language for that purpose.

29

Id. at 416, 368 P.2d at 891-92 (citations omitted).  Applying this rule to the facts before it, this court concluded that the habendum clause "did not operate to qualify or limit the estate conveyed thereby and the OR&L obtained by the deed a fee simple title" to the parcel of land.  Id. at 416, 368 P.2d at 892.

Here, in contrast with Midkiff, Kaiawe does not argue that the habendum clauses in the 1915 Deed or the 1983 Deed operated to limit the nature of the estate conveyed in either deed.  In other words, Kaiawe does not contend that, by operation of either or both of these habendum clauses, the Association or HCF owned an estate in fee simple determinable, rather than in fee simple absolute.  Additionally, unlike the plaintiffs in Midkiff, Kaiawe does not argue that because the Property is not solely being used as a cemetery, the Property should revert back to him as Mikala's heir.  Rather, Kaiawe seeks to use the habendum clauses in these deeds to serve a completely different purpose:  as evidence of Mikala's intent to dedicate the Property for public use as a cemetery.

Consequently, to the extent that Kaiawe seeks to use the habendum clauses in a different context and to accomplish a different purpose compared to the plaintiffs in Midkiff, Midkiff

is distinguishable and inapposite.[10]  Thus, we hold that the ICA

erred in relying upon <u>Midkiff</u> to conclude that the habendum

clauses in the 1915 Deed and 1983 Deed could not, by any means,

evince Mikala's intent to dedicate the Property for public use.

Having determined that the 1915 Deed and 1983 Deed

could bear upon whether Mikala intended to dedicate the Property

for public use, we now review the record <u>de novo</u> to ascertain

whether the circuit court correctly granted summary judgment in

favor of Ibbetson on Kaiawe's common law dedication claim.

> **b.   The circuit court erred in granting summary
> judgment in favor of Ibbetson on Kaiawe's common
> law dedication claim.**

Ibbetson and Kaiawe dispute whether the following

evidence illustrates that there are genuine issues of material

fact as to whether Mikala intended to dedicate the Property to

public use as a cemetery, and whether the public accepted the

Property for such use:  (1) the habendum clauses in the 1915 Deed

and the 1983 Deed; and (2) Pastor Haʻalilio's testimony about the

---

[10]    Assuming <u>arguendo</u> that the Property has been dedicated for public use, the effect of such dedication does not accomplish that which <u>Midkiff</u> prohibits (i.e., an effective reduction of the estate from a fee simple absolute to a fee simple determinable by operation of a habendum clause).  <u>See</u> <u>Gold Coast</u>, 140 Hawaiʻi at 450, 403 P.3d at 227 ("A common law dedication does not operate as a grant but as an equitable estoppel[.]" (quoting 23 Am. Jur. 2d Dedication § 54 (2013)).  In fact, Ibbetson concedes this point in his response to Kaiawe's application when he states:  "A hypothetical public right to use a property as a cemetery, because of an implied dedication, could arguably be considered a restriction in use by the legal owner to the extent that the owner's uses conflict with the public's, but that does not create a legal <u>title</u> right in favor of [Kaiawe]."

31

Property's use as a cemetery.

In our view, the habendum clauses in the 1915 Deed and 1983 Deed are ambiguous at most, and do not clearly evince whether Mikala intended to dedicate the Property as a public or private cemetery. However, we believe that Pastor Haʻalilio's testimony, viewed in the light most favorable to Kaiawe, suggests that the Property may have been used by the public as a cemetery for several decades. Accordingly, we hold that the ICA erred in concluding that Ibbetson was entitled to summary judgment on Kaiawe's common law dedication claim.

The habendum clause in the 1915 Deed reads as follows: "To have and to hold the said premises, with the appurtenances, so that it may be used as a cemetery, to the said Board of the Hawaiian Evangelical Association, it successors and assigns, forever." (Emphasis added.) Similarly, the habendum clause in the 1983 Deed states: "TO HAVE AND TO HOLD the same, together with the improvements thereon and all rights, easements, privileges and appurtenances thereunto belonging or appertaining, unto the Grantee, its successors and assigns, for cemetery purposes only, forever." (Emphasis added.)

In our view, these habendum clauses do not suggest one way or the other whether Mikala intended for the Property to be used by the public as a cemetery, or intended to restrict the

Property's use to only certain individuals, such as members of the Hoikeana Church congregation. The habendum clause in the 1915 Deed does not explicitly state that the Property was to be used by the public as a cemetery. Cf. Barker, 219 S.W. at 875-76 (concluding that a piece of property had been dedicated for public use where the habendum clause provided that a property was being conveyed "for the use and benefit of said church, as a public cemetery," and the public actually used the property as such). By the same token, however, the habendum clause in the 1915 Deed also does not contain any restrictive language indicating that the cemetery was to be available for use only by certain persons, as opposed to the general public, or that only individuals who were members of the Hoikeana Church could be buried on the Property. Similarly, the habendum clause in the 1983 Deed neither specifies that the Property must be available for public use as a cemetery, nor restricts the Property's use for the burials of only certain individuals. Accordingly, these habendum clauses are ambiguous at most as to whether Mikala intended to dedicate the Property for public use, and do not support one way or the other whether Ibbetson was entitled to summary judgment on Kaiawe's common law dedication claim.

By contrast, Pastor Haʻalilio's testimony, when viewed in the light most favorable to Kaiawe as the non-moving party,

33

indicates that there is a genuine issue of material fact as to whether the Property was used by the public as a cemetery over the course of several decades.  Because "the duration and type of public use [of a property] can raise both the presumption of the owner's intent (or offer) to dedicate land to public use, as well as constitute acceptance by the public," In re Banning, 73 Haw. at 305, 832 P.2d at 729, Pastor Haʻalilio's testimony illustrates that a genuine issue of material fact exists as to whether the Property was dedicated for public use as a cemetery.

Pastor Haʻalilio testified that she and her family continued to maintain the cemeteries on the Property from the 1950s through the 1980s, long after the congregation at the Hoikeana Church had dissipated.  She also testified that, as far as she knew, she had family members buried in Grave Site A, and Kaiawe's relatives were buried in Grave Site B.

Pastor Haʻalilio further testified that there were "quite a few" other individuals buried in Grave Site A besides her own family members and "those known to [her]."  Upon being asked whether she had been in contact with the descendants of the non-relative individuals who were buried upon the Property, Pastor Haʻalilio responded:

> Okay, I need to have you understand that there was never such thing as a master list back then.  When people died they were buried in the back yard or the front yard or wherever.  And it just so happened that

34

> this church that's across of the highway did have this piece of property graciously given over to the church for burial purposes. <u>There was no master list as to who was really buried there.  It's just by knowledge passed down from generation to generation that so and so is over here and so and so is over there</u>.  And that's how it is with my in-laws, my immediate family. <u>But there's also family members that have been taking care of their portions, their family portions, that's not here in Kona.  Some are from Kau and Dean Kaiawe's ohana were all scattered all over but as often as we are able we try to maintain those particular plots</u>. But it's not necessary that because my family is buried in [Grave Site] A that I would know who's buried in [Grave Site] B.  Many of those plots were not marked or identified by name.

(Emphases added.)  She further testified that descendants of individuals who were unrelated to her visited the Property in order to maintain their ancestors' grave sites throughout the years, though she was not completely aware of who all these individuals were.

The foregoing excerpts of Pastor Haʻalilio's testimony support that:  (1) in addition to her relatives and Kaiawe's ancestors, numerous other individuals were buried upon the Property; (2) there was no formal system according to which individuals were buried upon the Property, and no concrete record of who was buried where; (3) the descendants of the individuals who are currently buried upon the Property are now spread across the island of Hawaiʻi and other islands; and (4) these descendants, along with members of the Pukaʻana Congregational Church, continued to return to the Property to maintain their ancestors' grave sites throughout the years.  Viewed in the light

most favorable to Kaiawe, these facts support the inference that
members of the public who lived in the community near the
Property, not just those who were affiliated with the Hoikeana
Church, may have been buried on the Property.

Ibbetson maintains that the Property "had been used as
a private cemetery . . . for the benefit of certain families
affiliated with the no-longer existing Hoikeana Church."  In
support of this position, Ibbetson cites to Pastor Haʻalilio's
statement that "the cemetery is not a public cemetery."  He also
emphasizes that Pastor Haʻalilio stated that the Property was
"given over to the church for burial purposes."  To Ibbetson,
these facts definitively show that the Property was not used by
the public as a cemetery.

We disagree for two reasons.  First, Pastor Haʻalilio
did not suggest that the Property was not used by the public when
she stated that the Property was "not a public cemetery," as
Ibbetson suggests.  Her statement, in context, is as follows:

> [M]any of [my family members] are not aware that the
> cemetery is not a public cemetery, it sits on a
> private parcel that has been sold and is resided upon.
> So when they did come over [to maintain the grave
> sites] they were a little bit awkward, the situations
> that resolved as soon as I was able to, as far as the
> maintenance and use and access to the cemetery.

(Emphasis added.)  In other words, when she said that the
Property was "not a public cemetery," Pastor Haʻalilio was not
commenting on whether only certain individuals could be buried

36

there. Rather, she simply noted that Grave Site A was located on privately-owned property. Therefore, Ibbetson's argument fails to the extent that he misconstrues the record.

Second, although Pastor Haʻalilio testified that the Property was "graciously given over to the church for burial purposes," this statement only bears upon who owned the Property at the time of its initial conveyance. This statement does not shed light upon whether members of the public had buried their relatives on the Property, or whether only those who were affiliated with the Hoikeana Church were allowed to use the Property for burial purposes. Thus, Ibbetson's argument in reliance on this portion of the record is meritless.

To conclude, Pastor Haʻalilio's testimony indicates that there is a genuine issue of material fact as to whether the Property was used by the public as a cemetery for a prolonged period of time, and therefore, whether the Property was dedicated for public use under common law. See In re Banning, 73 Haw. at 304-05, 832 P.2d at 729-30. Ibbetson's arguments to the contrary misconstrue the record. Further, the record is devoid of other evidence showing that the Property was exclusively used by Hoikeana Church members, rather than the public. Accordingly, the circuit court erred in granting summary judgment in favor of Ibbetson on Kaiawe's common law dedication claim, and the ICA

37

erred in affirming the circuit court's ruling on this point.

## 2.    **Statutory Dedication**

"Statutory dedication occurs when the statutory provisions are complied with."  Maui Ranch, 6 Haw. App. at 421, 724 P.2d at 123.  HRS § 441-17 defines when pre-existing cemeteries may be deemed dedicated for exclusive use as a cemetery.  HRS § 441-17 (1993) states:

> All existing cemeteries or parts thereof which shall have been lawfully established, and for which a map or plat substantially similar to that required by section 441-3 has been filed or recorded in the bureau of conveyances or in the office of the assistant registrar of the land court, shall be deemed to have been dedicated as of [July 1, 1967], to the same extent and with like effect as provided in this chapter.

(Brackets in original.)  Put differently, HRS § 441-17 establishes two requirements that must be met in order for a pre-existing cemetery to be deemed statutorily dedicated for cemetery use.  First, the cemetery must have been lawfully established. HRS § 441-17.  Second, "a map or plat substantially similar to that required by [HRS §] 441-3" must be filed or recorded with the appropriate authorities.  HRS § 441-17.

Based upon the statute's plain language, HRS § 441-17 refers to HRS § 441-3 as a guidepost, which informs the second requirement for statutory dedication of a pre-existing cemetery. On this point, HRS § 441-3 (1993) provides in pertinent part:

> (a) The cemetery authority from time to time as any of

38

> the property described in the certificate of dedication, or any part or section thereof, is offered for sale, transfer, or disposition in the form of plots, crypts, or niches, shall also:
>
> > (1) In the case of land, survey and subdivide [the cemetery property] into sections, blocks, plots, avenues, walks, or other subdivisions; <u>make a good and substantial map or plat showing the sections, blocks, plots, avenues, walks, or other subdivisions with descriptive names, initials, or numbers</u>[.]

(Emphasis added.)

Thus, reading HRS § 441-17 alongside HRS § 441-3, it appears that in order for a pre-existing cemetery to be deemed statutorily dedicated for cemetery use under HRS § 441-17: (1) the cemetery must have been established lawfully; and (2) a map or plat "substantially similar" to a "map or plat showing the sections, blocks, plots, avenues, walks, or other subdivisions with descriptive names, initials, or numbers" must be filed or recorded with the appropriate authority. HRS §§ 441-17 and 441-3. Here, the parties do not dispute that the cemeteries on the Property were established lawfully, such that the first requirement was met. Their dispute lies in whether the record supports that HRS § 441-17's second requirement was met.

Though Kaiawe appears to acknowledge that the metes and bounds description from the 1915 Deed "only describes [the Property's] perimeter," he maintains that the metes and bounds description is "substantially similar" to the types of maps or plats that are required under HRS § 441-3. Thus, he appears to

39

argue that because the metes and bounds description satisfies the second requirement in HRS § 441-17, the circuit court erred in granting summary judgment in favor of Ibbetson on his statutory dedication claim.

The 1915 Deed's metes and bounds description states:

> Commencing at the Northeast corner of this piece on the old government trail, a little makai of the present government road, adjoining Kaohe 4, and running thence along the line between Kaohe 4 and Kaohe 5, 200 feet in a westwardly direction to a stake and stone pile; thence southwardly to a stake and stone pile 120 feet; thence eastwardly to a stake and stone pile 275 feet; and thence northwardly . . . to point of commencement, and containing about three-fourths of an acre, more or less, and being described in R.P. Number 2358 to Huakonou.

The metes and bounds description does not satisfy the second requirement for statutory dedication under HRS § 441-17 for two reasons.  First, the metes and bounds description itself is neither a map nor a plat.  Second, the metes and bound description merely outlines the Property's outer perimeter.  The metes and bounds description does not show or otherwise describe "the sections, plots, avenues, walks, or other subdivisions with descriptive names, initials, or numbers" within either of the cemeteries located on the Property.  Thus, inasmuch as the metes and bounds description is not a map or plat and only describes the Property's outer boundaries, the description is not, in our view, a map or plat that is "substantially similar" to that which is required under HRS § 441-3.  Furthermore, the record does not

40

contain any other type of map or plat that would appear to satisfy the second requirement of HRS § 441-17. Therefore, we conclude that, as a matter of law, Kaiawe has not established that the second requirement in HRS § 441-17 was met in this case. Accordingly, we agree with the ICA that the circuit court correctly granted summary judgment in favor of Ibbetson on Kaiawe's statutory dedication claim.

**B. Entitlement to Relief Under HRS Chapter 669**

On his second question on certiorari, Kaiawe contends that he is entitled to bring a quiet title action under HRS Chapter 669. Without citation to legal authority, Kaiawe argues that the ICA erred in holding that HRS Chapter 669 "is limited to deciding the legal ownership of land by 'paper title' or adverse possession only[.]" Rather, Kaiawe argues that he need not demonstrate that he had competing title to the Property, and that he could utilize HRS Chapter 669 to "establish[] a servitude on land."

Kaiawe's interpretation of HRS Chapter 669 is not supported by legal authority. HRS § 669-1(a) provides that an individual can bring an action to quiet title when he or she has a competing legally cognizable interest in a piece of property. Specifically, HRS § 669-1(a) (1993) states: "Action may be brought by any person against another person who claims, or who

41

may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim." This court has propounded clear principles as to a plaintiff's burden in pursuing a quiet title action:

> In an action to quiet title, the burden is on the plaintiff to prove title in and to the land in dispute, and, absent such proof, it is unnecessary for the defendant to make any showing. The plaintiff has the burden to prove either that he has paper title to the property or that he holds title by adverse possession. While it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants.

Maui Land & Pineapple Co. v. Infiesto, 76 Hawai'i 402, 407-08, 879 P.2d 507, 512-13 (1994) (citations omitted); Ka'upulehu Land LLC v. Heirs and Assigns of Pahukula, 136 Hawai'i 123, 137-38, 358 P.3d 692, 706-07 (2015) (applying the principles articulated in Maui Land & Pineapple Co. to a quiet title action brought pursuant to HRS Chapter 669). Put differently, Hawai'i case law explicitly provides that a plaintiff seeking relief under HRS Chapter 669 must demonstrate that he or she has title to the land, either via paper title or adverse possession, and that he or she has superior title compared to the defendant. See id. Kaiawe's argument is inconsistent with these well-established principles, and accordingly, is without merit.

Applying the foregoing principles in this case, here, Kaiawe does not contend that he has competing title to the

42

Property by way of paper title, or by virtue of adverse possession. The record does not contain any evidence indicating that Kaiawe had an interest in title to the Property superior to Ibbetson's title. On the contrary, the evidence in the record illustrates an unbroken chain of title, whereby Mikala conveyed the Property to the Association, who conveyed the Property to HCF, who transferred the Property to Ibbetson. Thus, because Kaiawe has not shown that he has title in the Property, and that his title is superior to Ibbetson's, the ICA correctly held that Kaiawe was not entitled to relief under HRS Chapter 669.

## IV. CONCLUSION

For the reasons stated above, the ICA correctly affirmed the circuit court's grant of summary judgment on Kaiawe's statutory dedication claim, and correctly determined that Kaiawe was not entitled to relief under HRS Chapter 669. However, the ICA erred in holding that the circuit court correctly granted summary judgment in favor of Ibbetson on Kaiawe's common law dedication claim.

Therefore, we affirm in part and vacate in part the ICA's November 30, 2017 judgment on appeal, which affirmed the circuit court's November 13, 2014 amended final judgment, and

43

remand the case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Michael J. Matsukawa for petitioner Dean Kaiawe | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Derek R. Kobayashi and Matthew A. Hemme for respondent Hawaii Conference Foundation | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| Dennis A. Krueger, Wayne Nasser and James K. Mee for respondent Daniel Ibbetson | /s/ Michael D. Wilson |

