Electronically Filed
Supreme Court
SCWC-17-0000387
25-OCT-2021
08:41 AM
Dkt. 48 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

RAY A. DELAPINIA and ROBYN M. DELAPINIA,
Petitioners/Plaintiffs-Appellants,

vs.

NATIONSTAR MORTGAGE LLC; FEDERAL NATIONAL MORTGAGE
ASSOCIATION; TERRY LOUISE COLE; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; AMERICAN SAVINGS BANK, F.S.B.,
Respondents/Defendants-Appellees.

SCWC-17-0000387

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000387; CIV. NO. 2CC161000432)

OCTOBER 25, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, JJ.,
AND CIRCUIT JUDGE WONG, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

In 2010, the plaintiffs' Kihei property was foreclosed

by nonjudicial foreclosure under Hawai'i Revised Statutes (HRS)

Part I (since repealed).  Several years later, the plaintiffs sued for wrongful foreclosure and quiet title against various defendants: their mortgagees, the subsequent purchaser of the property, and the subsequent purchaser's mortgagees.  The defendants moved for, and the circuit court granted, dismissal of all claims.  The Intermediate Court of Appeals (ICA), in a published opinion, vacated in part but affirmed as to one defendant: the subsequent purchaser's mortgagee.  Delapinia v. Nationstar Mortgage LLC, 146 Hawai'i 218, 458 P.3d 929 (Haw. Ct. App. 2020).

We accepted the plaintiffs' application for writ of certiorari to consider two aspects of the ICA's decision: First, the ICA adopted the "tender rule," a requirement under which a plaintiff seeking to quiet title must plead that it can tender the amount of indebtedness.  We decline to opine whether the tender rule applies in Hawai'i wrongful foreclosure cases generally.  But we hold that it is inapplicable on these facts, where the defendant asserting the rule against a quiet title claim is the subsequent purchaser's mortgagee, to whom the plaintiff is not in debt.  As the defendant who sought to assert the tender rule was not the plaintiffs' mortgagee, the plaintiffs do not need to plead tender in order to establish superior title as to that defendant.

2

Second, this case requires us to consider whether foreclosures that violate the power of sale are voidable or void. Silva v. Lopez, 5 Haw. 262 (1884), suggests that such wrongful foreclosures are void. However, we have considered this question in other wrongful foreclosure contexts more recently, and those cases favor protecting the reliance interests of a bona fide purchaser. Accordingly, we hold that wrongful foreclosures in violation of the power of sale are voidable, and to the extent Silva is to the contrary, it is overruled.

## II.  BACKGROUND

**A.   Circuit Court Proceedings**

**1.    The Complaint**

This case arises from several motions brought before the Circuit Court of the Second Circuit[1] (circuit court) in the Delapinias' wrongful foreclosure suit: Nationstar Mortgage LLC (Nationstar) and Federal National Mortgage Association's (Fannie Mae) (collectively, "Nationstar defendants") motion for judgment on the pleadings; defendant Terry Louise Cole's motion to dismiss, in which defendant American Savings Bank F.S.B (ASB) joined (collectively, "Cole defendants"); and defendant Mortgage Electronic Registration Systems, Inc.'s (MERS) motion to

---

[1]    The Honorable Rhonda I.L. Loo presided.

dismiss.  The circuit court granted all of the above motions (although only the motions to dismiss are at issue on certiorari), and accordingly, all facts alleged in the plaintiffs' First Amended Complaint (FAC) will be taken as true. Goran Pleho, LLC v. Lacy, 144 Hawai'i 224, 236, 439 P.3d 176, 188 (2019).

The Delapinias alleged the following in the FAC.  The Delapinias owned property in Kihei, which was secured by mortgage executed in 2007.  "In 2010, Nationstar claimed to be the assignee of the Mortgage . . . [and] claimed to be a mortgagee or successor to a mortgagee entitled under HRS Chapter 667 Part I (2008) to exercise the power of sale in the Mortgage."  In fact, "Nationstar was acting at the direction and behest of Fannie Mae" and "did not satisfy the conditions precedent to the valid exercise of that power."

Nationstar, "purporting to act under the power of sale in the Mortgage, executed a deed conveying the Property to Fannie Mae," but "[t]hat deed was void because Nationstar and Fannie Mae, as the foreclosing mortgagee, did not comply with the power of sale in the mortgage or the statute then governing their exercise of the power of sale, HRS Chapter 667 Part I."  The Delapinias identified the following violations of the power of sale clause and of the statutes:

a)  Plaintiffs were not served with a notice of acceleration

4

that complied with Paragraph 22 of the Mortgage;

b) The notice of intention of foreclosure published by Nationstar and Fannie Mae did not contain a description of the Property as required by HRS Section 667-7(a)(1), but merely published the address and Tax Map Key Number of the Property, which did not constitute the "description" contemplated by the statute;

c) The Notice did not offer buyers of the Property a warranty that the putative mortgagee had the right to sell or that the sale was conducted lawfully in compliance with the applicable statute and the power of sale;

d) No Defendant first advertised the notice of sale more than 28 days before the proposed auction date as required by HRS Section 667-7 (2008);

e) No Defendant used a Hawaii attorney to perform <u>all</u> of the acts required by the power of sale, including but not limited [to] having an attorney sign and give the notice of sale to Plaintiffs and having an attorney who conducted the sale executive the Affidavit of Foreclosure;

f) No Defendant ever published any date on which the Property was actually sold, in violation of Paragraph 22 of the Mortgage which stated that the mortgagee "shall sell" at the time specified in the published notice;

g) No Defendant ever held an auction on a published date, in violation of Paragraph 22 of the Mortgage which stated that the mortgagee "shall sell" at the time specified in the published notice;

h) No Defendant ever issued a written notice <u>to the public</u> of any postponed auction date, despite the requirement of Paragraph 15 of the Mortgage that "<u>all</u> notices" in connection with the Mortgage be "in writing" and state law requiring a "public announcement" of any postponement;

i) The date when the Property was purportedly sold to Nationstar or Fannie Mae (depending on whether one believes the Affidavit of Foreclosure or the quitclaim deed from Nationstar) was never published in a newspaper or otherwise in writing to the public; and

j) No Defendant ever recorded a lawful Affidavit of Foreclosure signed by the attorney conducting the putative sale.

(Emphases in original).

Fannie Mae purchased the property, and subsequently sold it to Cole by limited warranty deed.[2]  But the Delapinias

---

[2]   The Delapinias also contest whether Cole was a bona fide purchaser, as they argue subsequent purchasers should have been charged with constructive notice of the defects that were inferable from the Foreclosure

contended that both conveyances are "void and not merely voidable" under <u>Silva v. Lopez</u>, 5 Haw. 262, 271 (1884), and <u>Lee v. HSBC Bank USA</u>, 121 Hawai'i 287, 218 P.3d 775 (2009), because of the statutory and contractual violations that rendered the foreclosure wrongful. The plaintiffs therefore sought "the 'classic remedy' for a challenged nonjudicial foreclosure," return of title and possession, citing <u>Santiago v. Tanaka</u>, 137 Hawai'i 137, 154 n.33, 366 P.3d 612, 629 n.33 (2016).

The Delapinias brought two claims against the defendants based on these allegations. In Count I (quiet title), the Delapinias asked the court to quiet title in the property in favor of the plaintiffs – except for the 2007 Mortgage, "which should remain on the Property when it is returned to Plaintiffs" – ejectment of the third-party purchaser, possession, and damages from the lost rental value. In Count II (wrongful foreclosure), the Delapinias further alleged that the Nationstar defendants failed to act "in accordance with their duties as mortgagee"– since "no lawful published auction ever occurred," those duties continued. The plaintiffs asked for compensatory and punitive damages on the wrongful foreclosure count.

---

Affidavit. Whether Cole is in fact a bona fide purchaser is not at issue in this appeal.

## 2. Motions to Dismiss and for Judgment on the Pleadings

The Cole defendants moved to dismiss[3] the FAC under Hawai'i Rules of Civil Procedure (HRCP) Rule 8(a)[4] and Rule 12(b)(6)[5] on the basis that they were protected by their status as bona fide purchasers.[6] The Cole defendants pointed to this court's decisions in Santiago and Mount v. Apao, 139 Hawai'i 167, 384 P.3d 1268 (2016),[7] which they claim establish that "an unlawful nonjudicial foreclosure is at most 'voidable,' unless the property has been sold to innocent purchasers for value, in which case the appropriate remedy is an award of damages." As pleaded, it was "apparent from the face of the pleading" that the foreclosure was at most voidable, not void. Under Santiago and Mount, the appropriate remedy when the property has been conveyed to "innocent purchasers for value" is damages. It was also "apparent from the face of the FAC" that Cole was a bona fide purchaser.

The Delapinias argued in response that this court has described "the classic remedy for such a cause of action [as]

---

[3] The Nationstar defendants supported and joined in the arguments set forth in this motion.

[4] HRCP Rule 8(a) provides:

A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

return of title and possession." (Emphasis omitted). Moreover, the Delapinias contend Mount did not address the remedy when the sale violated the power of sale clause, rather than the statute.

On the other hand, Silva "is on point and is ultimately controlling here." Per the plaintiffs, that case stands for the principle that "if the power of sale was violated by improper publication of notice of the sale, the sale is 'void and not merely voidable,'" quoting Silva, 5 Haw. at 271. They maintained that Silva remains good law – cited approvingly by Kondaur Cap. Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 240 n.26, 361 P.3d 454, 467 n.26 (2015), and Mount – and as a result, "[the] foreclosure was void and conveyed nothing," negating the Cole

---

⁵     HRCP Rule 12(b)(6) allows for the dismissal of complaints for "failure to state a claim upon which relief can be granted."

⁶     They also contended that the Delapinias' claims were time-barred. Likewise, the Nationstar defendants filed an answer to the FAC, largely denying the allegations and asserting as a defense, among other things, the statute of limitations. They subsequently moved for judgment on the pleadings, or in the alternative for summary judgment, per HRCP Rule 12(c). In that motion, they too argued that the Delpainias' claims were time barred, either by a two- or six-year statute of limitations. The motion also reiterated the arguments that "an improperly completed non-judicial foreclosure is voidable" not void. (Emphasis omitted). In the alternative, they argued that laches barred recovery.

The Delapinias contended that the relevant statute of limitations was twenty years.

The court circuit concluded that the two-year statute of limitations applied and barred the claim.

⁷     Mount was decided after the FAC but before the relevant motions from the defendants.

defendants' bona fide purchaser defense.  (Original emphasis altered).

MERS also moved to dismiss the FAC.  It raised substantially similar arguments regarding Cole's bona fide purchaser status, contending that the foreclosure sale cannot be voided pursuant to Santiago and Mount.  MERS asserted that "citation to the [1884] Silva decision ignores the rulings in both Mount and Santiago."  And, like the Cole defendants, MERS argued that Cole was a bona fide purchaser because only notice of pending litigation – not the record notice alleged in the complaint – would have undermined the protection afforded to third-party purchasers for value.

Further, MERS argued that "[w]hile this case should be dismissed in its entirety against MERS based on Cole's bona fide purchaser defense, Plaintiffs' underlying claims are equally meritless" because the Delapinias failed to "allege that they have paid or are able to tender the amount of indebtedness that would be due under the Mortgage," citing cases from the United States District Court for the District of Hawai'i that appear to adopt the "tender rule."  "Here, Plaintiffs['] Count I should be dismissed because they do not allege that they have paid or are able to tender the amount of indebtedness.  In fact, Plaintiffs argue that if they prevail that 'the Property remains encumbered by the [Mortgage].'"

9

In opposition to MERS, the Delapinias reiterated many of the same arguments as they presented in their response to the Cole defendants' motion. They emphasized that Silva directly controls this case and renders the deed void, not voidable. The Delapinias also addressed MERS's contention that the "tender rule" barred their complaint. They acknowledged this rule has been "adopted in some mainland jurisdictions," but asserted it is inapplicable here. (Capitalization altered). MERS cited cases in which the quiet title claim was against the mortgagee; here, "[t]he FAC plainly alleges that the original mortgage that Plaintiffs gave to Nationstar's and Fannie Mae's assignor remains on the property, and Plaintiffs only seek to quiet the title to the Property[.]" (Emphasis in original). They "will accept the Property back with the mortgage still on it," at which point the Nationstar defendants are free to "attempt a lawful foreclosure" should the default remain. In any event, Santiago "does not hold that the mortgagor must first pay off or offer to pay off the mortgage before being entitled to" relief in the form of possession.

The circuit court granted the Cole defendants' motion, orally ruling as follows:

> Even when accepting Plaintiffs' factual allegations as true, dismissal of the claims against Terry Cole, American Savings Bank and Nationstar is appropriate.
> . . .
> As to the sale being void or voidable, any reading of the law in Hawaii is improperly completed nonjudicial

10

foreclosure sales are voidable -- my reading of the law, excuse me, is that nonjudicial foreclosure sales are voidable if the claim is timely and the current owners are not bona fide purchasers.

There's no allegation that Defendants did not pay value for the property, and there is no allegation that the current owners had actual notice of Plaintiffs' claims.

There is no allegation that Plaintiffs or anyone else recorded any kind of documentation reasonably indicating Plaintiffs had any interest in the subject [property]. Therefore, the argument for the non-bona fide purchaser status under constructive or inquiry notice fails as well. So I'm going to go ahead and grant both motions.

The circuit court subsequently granted MERS's motion as well, issuing the following in its written order:

1. Under Hawai'i law, a properly completed non-judicial foreclosure sale is voidable if the claim is timely and the current owners are bona fide purchasers. There is no allegation that Cole did not acquire the property for value and there is no allegation that Cole had notice of Plaintiffs' outstanding claims if any, so Cole is a bona fide purchaser. The court notes that it has already dismissed claims against Cole because of her innocent bona fide purchaser status. As Cole's mortgagee, Defendant MERS receives the same protection as Cole.
2. Plaintiffs fail to state a Quiet Title Claim as they do not allege that they have paid or are able to tender the amount of indebtedness due under their mortgage.
3. The notice of sale complied with the mortgage. The notice of sale properly described the property under HRS 667-7(a)(1).
4. The publishing of the notice of sale complied with HRS 667-7.
5. A Hawaii attorney is not required to sign the notice of sale or affidavit of foreclosure.
6. Lastly, written publication of postponement of an auction is not necessary.

## B.    ICA Proceedings

The Delapinias appealed.  The ICA affirmed in part and vacated in part[8] the circuit court's judgment in a published

---

[8]    The ICA vacated the circuit court's order granting judgment on the pleadings to Nationstar and Fannie Mae and the order dismissing the Cole defendants, which was based in part on the conclusion that the Delapinias' claim was time-barred by the two-year statute of limitations.  As before the

opinion.  Regarding the dismissal of MERS, the ICA reasoned that

the tender rule barred the Delapinia's claim:

> The tender rule is based on the principle that a plaintiff seeking to quiet title "must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants." Maui Land & Pineapple Co.[ v. Infiesto], 76 Haw[ai'i] [402,] 408, 879 P.2d [507,] 513 [((1994)]. The tender rule requires as [sic] borrower, in bringing a quiet title action, to allege that he has paid, or is able to tender, the amounts owed. Klohs v. Wells Fargo Bank, N.A., 901 F. Supp. 2d 1253, 1262-63 (D. Haw. 2012).

Delapinia, 146 Hawai'i at 228, 458 P.3d at 939.

In this case, "the Delapinias did not allege either

that 'they have paid off [Nationstar Mortgage] or are prepared

to tender all amounts owing' to Nationstar such as is necessary

to establish superior title and maintain a quiet title action."

Id. (brackets in original) (quoting Klohs, 901 F. Supp. 2d at

1262).

The ICA also concluded that no exception to the tender

rule applied.  The ICA reasoned that tender requirement does not

apply "where the borrower brings a quiet title claim against a

party who, according to the allegations in the Complaint (which

the court accepts as true), is not a mortgagee and who otherwise

---

circuit court, see supra note 6, the parties argued in their ICA briefs over whether the relevant statute of limitations was 2-, 6-, or 20-years.

The ICA concluded that the statute of limitations was six years, and that the Delapinias timely filed their complaint. Delapinia, 146 Hawai'i at 224-26, 458 P.3d at 935-37.  As no defendant sought certiorari review, this memo will not address the statute of limitations issue any further.

has no interest in the property whatsoever." Id. (quoting

Klohs, 901 F. Supp. 2d at 1263 n.6). However,

> based on the Delapinias' allegations in the FAC, MERS has an interest in the Property. In the portion of the FAC describing the parties to the action, the Delapinias described MERS as "a foreign corporation which is and at all relevant times was doing business in Hawaii, and which claims to hold a mortgage on the Property as nominee." In their quiet title count, the Delapinias alleged that "Defendant Cole has purported to grant a first mortgage on the Property to Defendant MERS as nominee of 'Pinnacle Capital Mortgage Corporation[.]'" Thus, where MERS has an interest in the Property according to the allegations in the FAC, the tender rule applies.

Id. (brackets in original).

As to the Cole defendants, "[t]o the extent that the Delapinias alleged that a wrongful foreclosure voided the sale and all subsequent transfers, we reject this contention as a matter of law." Id. at 229, 458 P.3d at 940. "While it is true that the supreme court has not expressly overruled Silva, the supreme court has more recently held that improper foreclosure sales are voidable." Id. The ICA pointed to Kondaur and Santiago for this principle, noting that in both cases, we determined the foreclosure sale to be "voidable." Id. (citing Kondaur, 136 Hawaiʻi at 240, 361 P.3d at 467; Santiago, 137 Hawaiʻi at 158, 366 P.3d at 633). And while this court in Mount cited Silva approvingly and acknowledged that in Lee, we held a foreclosure sale to be void, Mount also factually distinguished Lee on the grounds that the sale in Lee was not yet completed. Id. (citing Mount, 139 Hawaiʻi at 180, 384 P.3d at 1281). Thus,

13

the ICA "conclude[d] that improper foreclosure sales are voidable, rather than void, and that the supreme court has either distinguished or impliedly overruled its earlier decisions holding to the contrary."  Id.

Nonetheless, the ICA vacated the order dismissing the Cole defendants because "[t]he Delapinias were not required to make any allegations pertaining to possible affirmative defenses in the FAC," and the circuit court's conclusion that Cole was a bona fide purchaser as a matter of law was improper.  Id.

C.   **Supreme Court Proceedings**

On certiorari, the Delapinias challenge the ICA's holding adopting the tender rule and the ICA's treatment of Silva.  First, they argue that the ICA gravely erred by "requiring a wrongful foreclosure victim to also plead and prove the ability to tender the full amount of the wrongfully foreclosed mortgage as a condition to receiving the 'classic remedy' [of return of title and possession]."  (Emphasis omitted).  Even if the tender rule were Hawai'i law, the Delapinias argue that the ICA did not correctly analyze the rule's exceptions.  Second, the Delapinias argue that the ICA "gravely erred in exceeding its constitutional authority and declaring that Silva v. Lopez, . . . a decision of this court that has stood for over 135 years, has been 'impliedly overruled[.]'"  Per the Delapinias, "[t]his court has never

14

distinguished <u>Silva</u>" on its holding that improper foreclosure sales are void as opposed to voidable. "[T]he ICA does not have the power to limit decisions of this court," and <u>Silva</u> directly controls.

The Nationstar defendants and the Cole defendants argued in response that the ICA correctly declined to apply <u>Silva</u>. MERS additionally defended the ICA's application of the tender rule: per MERS, the Delapinias are conflating their wrongful foreclosure claim against the Nationstar defendants with the quiet title claim against MERS. Quiet title requires that the Delapinias establish the superiority of their title, which MERS claims requires the Delapanias to "prov[e] that [they] can cure the default[.]" The rule is rooted in equity: "[e]quity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act[.]" (Quoting <u>Arnolds Mgmt. Corp. v. Eischen</u>, 158 Cal. App. 3d 575, 578-79 (1984)).

## III. STANDARD OF REVIEW

> A trial court's ruling on a motion to dismiss is reviewed de novo. The court must accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff; dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief.

<u>Goran Pleho</u>, 144 Hawai'i at 236, 439 P.3d at 188 (quoting <u>Wong v. Cayetano</u>, 111 Hawai'i 462, 476, 143 P.3d 1, 15 (2006)) (emphasis

omitted).

## IV.  DISCUSSION

### A.   MERS May Not Assert the Tender Rule to Bar the Quiet Title Action in this Case

The tender rule has been described as follows:

> As a general rule, a debtor cannot set aside the foreclosure based on irregularities in the sale without also alleging tender of the amount of the secured debt. . . . "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]."

Ram v. OneWest Bank, FSB, 183 Cal. Rptr. 3d 638, 649-50 (Cal. Ct. App. 2015) (citations omitted) (brackets in original).

Although we have not determined whether the tender rule is Hawai'i law, in other jurisdictions, the rule is rooted in the principle that "a defaulted borrower who seeks to set aside a [foreclosure] sale is required to do equity before the court will exercise its equitable powers." Lona v. Citibank N.A., 202 Cal. App. 4th 89, 112 (2011). Said differently, plaintiffs must "come into equity with clean hands" by paying their outstanding debts. Shimpones v. Stickney, 28 P.2d 673, 678 (Cal. 1934). Allowing plaintiffs to claim property without paying what they owe "would give them an inequitable windfall, allowing them to evade their lawful debt." Stebley v. Litton Loan Servicing, LLP, 134 Cal. Rptr. 3d 604, 607 (Cal. Ct. App. 2011); see also Dimock v. Emerald Properties LLC, 97 Cal. Rptr. 2d 255, 262 (Cal. Ct. App. 2000) ("Th[e tender] requirement is

16

based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose.").

In jurisdictions in which the tender rule applies, "there is no exclusive list of circumstances where a tender is not essential."[9]  5 Miller & Starr, Cal. Real Estate § 13:256 cmt. (4th ed. 2019).  The question of tender turns on the "equities of the situation," the "degree of prejudice" or "misconduct," and the "nature" of the default.  Id.  In California, for instance, the requirement of tender is an element of a wrongful foreclosure claim, but California courts recognize several exceptions:

---

[9]     The ICA seemed to conclude that the only exception to the tender rule lies "where the borrower brings a quiet title claim against a party who, according to the allegations in the Complaint (which the court accepts as true), is not a mortgagee and who otherwise has no interest in the property whatsoever."  Delapinia, 146 Hawai'i at 228, 458 P.3d at 939 (emphasis omitted) (quoting Klohs, 901 F. Supp. 2d at 1263 n.6).  Because the FAC alleged that MERS claimed an interest in the property, the ICA reasoned that the tender rule could not be excused.

But the language "who otherwise has no interest in the property whatsoever" comes from the United States District Court for the District of Hawai'i case Klohs v. Wells Fargo Bank, N.A., 907 Supp. 2d 1253, 1263 n.6 (D. Haw. 2012), which in turn was quoting Amina v. Bank of New York Mellon, No. CIV. 11-00714 JMS, 2012 WL 3283513, at *4 (D. Haw. Aug. 9, 2012).  In context, that language merely reflected the facts of Amina, in which the plaintiffs alleged the defendant bank was threatening to foreclose when it lacked any connection at all to the mortgage.  Id. at *1.  As explained herein, there are a number of exceptions to the tender rule.  Indeed, as the Delapinias point out, every quiet title action will, by its nature, require the plaintiffs to allege that the defendants have claimed an interest in the property, so it cannot be the case that mere allegations that the defendant has claimed an interest will per se require the plaintiff to plead tender.

First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. . . .

Second, a tender will not be required when the person who seeks to set aside the trustee's sale[10] has a counterclaim or setoff against the beneficiary. In such cases, it is deemed that the tender and the counterclaim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required. . . .

Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. (Humboldt Savings Bank v. McCleverty (1911) 161 Cal. 285, 291, 119 P. 82 (Humboldt).) In Humboldt, the defendant's deceased husband borrowed $55,300 from the plaintiff bank secured by two pieces of property. The defendant had a $5,000 homestead on one of the properties. (Id. at p. 287, 119 P. 82.) When the defendant's husband defaulted on the debt, the bank foreclosed on both properties. In response to the bank's argument that the defendant had to tender the entire debt as a condition precedent to having the sale set aside, the court held that it would be inequitable to require the defendant to "pay, or offer to pay, a debt of $57,000, for which she is in no way liable" to attack the sale of her $5,000 homestead. (Id. at p. 291, 119 P. 82.)

Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face.

Lona, 202 Cal. App. 4th at 112-13 (citations and footnotes omitted).

We need not and do not decide whether the tender rule applies in wrongful foreclosure claims. We hold, however, that the rule does not bar the quiet title action against MERS under the circumstances of this case, where the party asserting the rule in a motion to dismiss is not the plaintiff's mortgagee. The Delapinias are not indebted to MERS, who asserts the tender rule here and who is involved in this case through the

---

10    In California, a trustee's sale is a nonjudicial foreclosure procedure; the trustee holds the power of sale. See 5 Miller & Starr, Cal. Real Estate § 13:1.

18

subsequent purchaser – MERS, in other words, was never the Delapinias' mortgagee.  Cf. Trusty v. Ray, 249 P.2d 814, 817 (Idaho 1952) ("A mortgagor cannot without paying his debt quiet title as against the mortgagee[.]" (emphasis added));  Rockridge Tr. v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1158 (N.D. Cal. 2013) ("[A] borrower may not assert a quiet title action against a mortgagee without first paying the outstanding debt on the property." (emphasis added));  Marzan v. Bank of Am., 779 F. Supp. 2d 1140, 1156 (D. Haw. 2011), abrogated on other grounds by Compton v. Countrywide Fin. Corp., 761 F.3d 1046 (9th Cir. 2014) ("[I]n order to assert a claim for 'quiet title' against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness." (emphasis added)).

Bank of America, N.A. v. Reyes-Toledo, 143 Hawai'i 249, 428 P.3d 761 (2018), supports this conclusion.  In that case, the ICA concluded that the tender rule barred a homeowner's quiet title counterclaim as against a bank seeking foreclosure on her property, which she alleged was not her mortgagee.  Id. at 254, 428 P.3d at 766.  We vacated the decision of the ICA, reasoning that under our notice-pleading standard, the homeowner, by asserting that the bank was not her mortgagee, stated a quiet title claim sufficient to survive a motion to dismiss.  Id. at 265-66, 428 P.3d at 777-78.  Reyes-Toledo thus suggests that the tender rule, if it is Hawai'i law, does not bar

19

a suit from proceeding against a party who is not the plaintiff's mortgagee, as the homeowner's quiet title claim survived in that case by virtue of the fact that they pleaded that the bank was not the mortgagee.[11] We did not require the homeowner to satisfy their debt against the true mortgagee in order to "come into equity with clean hands," Shimpones, 28 P.2d at 678, because the debt was allegedly not the defendant's to enforce.

This conclusion makes sense given the equitable reasons underpinning the rule. In a quiet title action, "[w]hile it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants." Ibbetson v. Kaiawe, 143 Hawai'i 1, 17, 422 P.3d 1, 17 (2018) (quoting Maui Land & Pineapple Co. v. Infiesto, 76 Hawai'i 402, 407-08, 879

---

[11]     One federal district court has taken Reyes-Toledo as

    implicit endorsement of the [tender] rule; after all, the
    survival of Reyes-Toledo's quiet title claim, devoid as it
    was of allegations of tender, appears to have been
    predicated on the Hawai'i Supreme Court's acceptance at face
    value, under the notice pleading standard, of her
    allegations that Bank of America was not the mortgagee.

Gamblin v. Nationstar Mortgage LLC, 2018 WL 5831207 at *13 (D. Haw. November 7, 2018) (emphasis in original).

    While we have not implicitly or explicitly endorsed the tender rule, we agree that Reyes-Toledo supports the conclusion that a non-mortgagee defendant to a quiet title claim, like MERS in this case, may not invoke it.

P.2d 507, 512-13 (1994)).  The Delapinias do not need to plead tender to establish superior title to MERS, even assuming they would in a wrongful foreclosure action against the Nationstar defendants, because the Delapinias claim MERS acquired its interest via a non-innocent third-party purchaser, who knowingly purchased the property from a wrongful foreclosure.[12]  Cf. Carpenter v. PNC Bank, N.A., 386 F. Supp. 3d 1339, 1347 (D. Haw. 2019) (holding that quiet title plaintiffs had adequately pleaded their "superior title" to defendants when plaintiffs alleged that the defendants purchased the subject property following a wrongful foreclosure and were not bona fide).  The wrongful foreclosure count was not dismissed.  Allowing those in MERS's position – non-mortgagees who are allegedly non-bona fide purchasers – to evade the quiet title action altogether by asserting the tender rule against the Delapinias in a motion to dismiss would not serve the rule's equitable purpose of preventing the Delapinias from "evad[ing] their lawful debt," Stebley, 134 Cal. Rptr. 3d at 607, because it is not MERS's debt to enforce in this case.

---

[12]    "A non-bona fide purchaser is one who does not pay adequate consideration, 'takes with knowledge that his transferor acquired title by fraud, or buys registered land with full notice of the fact that it is in litigation between the transferor and a third party.'"  Kondaur, 136 Hawai'i at 240 n.27, 361 P.3d at 467 n.27 (brackets and ellipsis omitted) (quoting Akagi v. Oshita, 33 Haw. 343, 347 (Haw. Terr. 1935)).

On the other hand, if the third-party purchasers were indeed innocent purchasers for value,[13] their interests are adequately safeguarded by virtue of our conclusion below that the sale is at most voidable. If the purchasers were bona fide, damages would be the appropriate remedy. See infra Part IV.B. Accordingly, if the purchasers were innocent purchasers for value, the Delapinias have failed to establish "that [their] title is superior to that of [MERS]," Ibbetson, 143 Hawai'i at 17, 422 P.3d at 17 (2018), as required for a quiet title claim to succeed; innocent purchasers for value would enjoy superior title to the Delapinias if the sale is not void ab initio. 92A C.J.S. Vendor and Purchaser § 528 (2021) ("A bona fide purchaser, meaning one who acquires an interest in a property for valuable consideration, in good faith, and without notice of another party's adverse interests in the property, takes such title free of any interests of third persons except those of which the bona fide purchaser has notice."). For this reason, MERS's argument that the tender rule is needed to protect bona fide purchasers is unavailing – that the sale is voidable means

---

[13] Whether Cole was in fact a bona fide purchaser is a contested issue upon which we do not comment in this opinion.

their purported bona fide purchaser status is a defense to the quiet title action.[14]

Therefore, under the facts of this case, we hold that the tender rule does not bar the action against MERS, and MERS should not have been dismissed on that basis.  We emphasize that the scope of this holding is limited: the application of the tender rule to wrongful foreclosures generally, or to factual and procedural circumstances unlike those presented by this case, is not before us.  We hold only that the tender rule is not an absolute bar to a quiet title action against a party to whom the plaintiff is not indebted under the facts of this case, and the Delapinias have alleged sufficient facts for their quiet title action against MERS to survive dismissal at this stage.

## B.    A Wrongful Foreclosure in Violation of the Power of Sale Is Voidable, Not Void, and Silva Is Overruled to the Extent it Held to the Contrary

We next turn to whether, if true, the facts alleged in the Delapinias' complaint render the foreclosure sale void or voidable.  If void, the sale is "invalid" and "unenforceable," and a subsequent purchaser "is entitled only to return of [their] down[ ]payment plus accrued interest."  Lee v. HSBC Bank USA, 121 Hawaiʻi 287, 292, 218 P.3d 775, 780 (2009).  If

---

[14]    If the sale were void, the tender rule would not apply in any event.  E.g., Barrionuevo v. Chase Bank, N.A., 885 F. Supp. 2d 964, 970 (N.D. Cal. 2012) ("[W]here a sale is void, rather than simply voidable, tender is not required." (citation omitted)).

23

voidable, the sale can be invalidated at the timely election of the mortgagor, but "where the property has passed into the hands of an innocent purchaser for value, rendering the voiding of a foreclosure sale impracticable, an action at law for damages is generally the appropriate remedy." Mount v. Apao, 139 Hawai'i 167, 180, 384 P.3d 1268, 1281 (2016). Answering this question requires us to revisit the rule set forth in Silva v. Lopez. The ICA correctly observed that Silva's holding is in tension with our recent wrongful foreclosure precedent. We therefore take this opportunity to overrule Silva to that extent that case would render foreclosures in violation of the power of sale void. Foreclosures in violation of the power of sale are voidable.

In Silva, the defendant mortgagee failed to comply with "all the directions of the power of sale": he did not "ent[er] upon or demand for the possession of the mortgaged premises and chattels" and, as particularly important here, he did not provide "three weeks to intervene between the first publication and the time of sale mentioned." 5 Haw. at 263, 271. The mortgagee held the sale on June 24, 1884; had he done so on June 25, 1884, "the advertisement would have been sufficient in time," but as it was, the mortgagee failed to comply with the power of sale, which required three weeks' notice. Id. at 268. Justice Austin held in the decision

24

appealed from that "if the notice is insufficient, the sale under it is void and not merely voidable," and the supreme court adopted this analysis. Id. at 271; see also id. at 265 (referring to the opinion of Justice Austin "[f]or the full discussion and citation of authorities" on the issue of notice). Justice Austin acknowledged that "[t]here are several purchasers upon whom this decree will operate as a hardship." Id. at 273. Nonetheless, "the sale must be set aside, and the conveyances made thereunder must be cancelled." Id.

The Delapinias argue that here, as in Silva, they have alleged that the mortgagees failed to comply that the advertising provisions of the power of sale, allegations that we take as true; accordingly, they contend the ICA was bound to follow Silva, and the sale is void. We agree that to the extent the ICA concluded that Silva has been impliedly overruled, it erred. As recently as in Mount, we noted: "As far back as 1884, this court voided a mortgage sale of real estate and livestock because the mortgagee had not complied with the conditions of the power of sale by scheduling the foreclosure sale one day too early." 139 Hawai'i at 180, 384 P.3d at 1281 (citing Silva, 5 Haw. at 263). We also explained that Lee and the United States Court of Appeals for the Ninth Circuit opinion In re Kekauoha-Alisa, 674 F.3d 1083 (9th Cir. 2012), which applied Hawai'i law,

25

likewise held wrongful foreclosures to be void rather than voidable. Id. But we distinguished those cases on their facts.

> In Lee, the high bidder at the nonjudicial foreclosure sale had not completed the sale. 121 Hawai'i at 289, 218 P.3d at 777. Under those facts, we held that the sale was void and that the high bidder was entitled only to return of his down payment plus accrued interest. Id. In Kekauoha-Alisa, the lender itself had purchased the property through a credit bid, so no third party was involved. 674 F.3d at 1086.

Mount, 139 Hawai'i at 180, 384 P.3d at 1281.

That said, Silva is inconsonant with the direction of our recent precedent, and we clarify today that a wrongful foreclosure that violates the power of sale is voidable, not void. This conclusion flows from our cases that make clear that if a foreclosure violates a statute governing the nonjudicial foreclosure scheme, or other law extrinsic to the mortgage itself, the sale is "voidable at the election of the mortgagor," and in turn, "where the property has passed into the hands of an innocent purchaser for value, . . . an action at law for damages is generally the appropriate remedy." Mount, 139 Hawai'i at 180, 384 P.3d at 1281. In Mount, for instance, the mortgagee had "fail[ed] to provide reinstatement or cure information to [the mortgagor], as required by HRS § 667-5(c)(1)," and accordingly, "the nonjudicial foreclosure sale was conducted in violation of HRS § 667-5." Id. at 179-80, 384 P.3d 1268, 1280-81. Nonetheless, we noted that the third-party purchasers had "completed the sale, took possession of the Property, and have

26

now had the Property for some time . . . rendering the voiding of a foreclosure sale impracticable[.]"  Id. at 180, 384 P.3d at 1281; see also Kondaur, 136 Hawai'i at 242 n.29, 361 P.3d at 469 n.29 ("[I]f the Ulrich[ v. Sec. Inv. Co., 35 Haw. 158, 168 (1939)] requirements were not satisfied, a quitclaim deed would convey only a voidable interest in the property.").

Santiago is particularly instructive.  That case arose from an ejectment action after a foreclosure pursuant to HRS § 667-5; the mortgagors raised wrongful foreclosure as a defense to the action, arguing that either the power of sale clause in the mortgage was deficient to permit nonjudicial foreclosure, or they had a right to cure the defect, which they properly exercised.  Santiago, 137 Hawai'i at 154, 366 P.3d at 629.  The circuit court concluded neither argument had merit; we reversed on both issues.  But as to the mortgagor's remedy, we explained:

> Where it is determined that the nonjudicial foreclosure of a property is wrongful, the sale of the property is invalid and voidable at the election of the mortgagor, who shall then regain title to and possession of the property.  See Ulrich v. Sec. Inv. Co., 35 Haw. 158, 168 (1939) (holding that where a self-dealing mortgagee fails to exercise its right to non-judicial foreclosure in a manner that is fair, reasonably diligent, and in good faith and to demonstrate that an adequate price was procured for the property, the resulting sale is void); Lee v. HSBC Bank USA, 121 Hawai'i 287, 292, 218 P.3d 775, 780 (2009) (concluding "that an agreement created at a foreclosure sale conducted pursuant to HRS section 667-5 is void and unenforceable where the foreclosure sale is invalid under the statute").  Voiding the foreclosure sale at this time, however, has been rendered impracticable because the [property] has already been resold by [the defendant] to a third party. See 123 Am. Jur. Proof of Facts 3d § 31 (2011) ("It has long been held that if the property has passed into the hands of an innocent purchaser

27

> for value, an action at law for damages is generally the
> appropriate remedy.").

Santiago, 137 Hawai'i at 158, 366 P.3d at 633.

Even though we held that the mortgagee altogether lacked a power of sale, we nonetheless determined that the sale was at most voidable, and where the property had passed to a bona fide purchaser, the appropriate remedy was damages. Id. We see no reason why a foreclosure in violation of a power of sale ought to be treated differently. It stands to reason that if damages were proper absent any authorizing power of sale, the same must be true when the defect is failure to comply with an otherwise-valid power of sale.

The Delapinias attempt to distinguish Santiago and related cases. They argue that rather than supply a blanket rule, we "used such non-exclusive terms as 'impracticable' and 'generally,'" pointing out "the purchaser was not before the court" in Santiago. But these distinctions are unavailing. The impracticability of voiding the sale does not stem from the absence of the bona fide purchaser to the suit but from the reliance interests they have accrued. In Santiago, we relied on Jenkins v. Wise, 58 Haw. 592, 574 P.2d 1337 (1978), to justify the award of damages. Jenkins explains: "Equity, however, abhors forfeitures and where no injustice would thereby result to the injured party, equity will generally favor compensation rather than forfeiture against the offending party." Id. at

28

597, 574 P.2d at 1341.  In a wrongful foreclosure in violation of a power of sale where the purchasers have "completed the sale, took possession of the Property, and have now had the Property for some time," Mount, 139 Hawai'i at 180, 384 P.3d at 1281, the principle from Jenkins disfavoring forfeiture applies with equal force.

The Delapinias argue that failure to adopt their position would leave Hawai'i "out of step" with other states, but we are not persuaded by the cases they cite from other jurisdictions.  The Massachusetts Supreme Judicial Court decision Pinti v. Emigrant Mortgage Co., 33 N.E.3d 1213 (Mass. 2015) is a particularly useful counterpoint insofar as it illustrates the differences between Hawai'i law and that of other states.  In that case, the Massachusetts Supreme Judicial Court concluded that a mortgagee must strictly comply with the terms of the power of sale.  33 N.E.3d at 1218.  The mortgagee failed to strictly comply because it alerted the mortgagors of their "right to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense," whereas the power of sale required notice of "the right to bring a court action."  Id. at 1222 (emphasis in original).  The court reasoned that in a nonjudicial foreclosure state like Massachusetts, the former language might wrongly give the impression that the mortgagor need not initiate an action but

29

may simply raise the defense in due course of judicial foreclosure proceedings.  Id.

A majority of the Pinti court concluded that this defect rendered the foreclosure void and any subsequent conveyances to third parties a nullity.  "[A] bona fide purchaser's 'title is not to be affected by mere irregularities in executing a power of sale contained in a mortgage, of which irregularities he has no knowledge, actual or constructive.'"  Id. at 1225 (citing Chace v. Morse, 76 N.E. 142, 143-44 (Mass. 1905); Rogers v. Barnes, 47 N.E. 602, 604 (Mass. 1897)).  The deficient notice amounted to more than a "mere irregularity" because of the "disastrous consequences" it could have:

> if the mortgagor has a valid defense to the foreclosure sale going forward, but is not made aware that he or she must initiate an action in court against the mortgagee to raise that defense, the sale may well proceed and result in title passing to a bona fide purchaser without knowledge of the issue—at which point, and depending on the nature of the defense, the mortgagor's right to redeem his or her home may well be lost.

Id. at 1225-26.

Three justices dissented on this issue.  They would have held that the sale was voidable, but only because in their view, the notice provision was not a substantive requirement of the power of sale.  Id. at 1228 (Cordy, J., dissenting).  Indeed, even the dissenters agreed with the "familiar rule that one who sells under a power [of sale] must follow strictly its terms.  If he fails to do so, there is no valid execution of the

30

power, and the sale is wholly void." Id. at 1228-29 (brackets in original) (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40 (Mass. 2011)) (quotation marks omitted). The dissenters explained that failure to adhere to the integral terms of a power of sale (e.g., "the existence of a default"; "assignment of the note or authority to act on behalf of the note holder at the time of foreclosure"; or, saliently here, "proper advertisement of the foreclosure sale") renders a deed void ab initio. Id. at 1229. By contrast, where "there are equitable reasons why the sale should be set aside," the deed is voidable in equity - in which case, "[t]he principle which is applied in courts of equity is that they will not throw the loss upon a person who has innocently acquired title to property for value." Id. at 1228-29 (citations omitted).

It would seem, then, that the Pinti court would unanimously agree that if, as the plaintiffs allege, the Nationstar defendants failed to strictly comply with the advertisement requirements of the power of sale, the deed would be void ab initio in Massachusetts. See McGreevey v. Charlestown Five Cents Sav. Bank, 2 N.E.2d 543, 544 (Mass. 1936) (holding that a sale advertised in the wrong county did not "strictly compl[y]" with power of sale, and "the sale is wholly void").

Other states likewise do not apply a blanket rule as to when a sale is void versus voidable, and instead evaluate the magnitude of the error – "mere irregularities" (as put in Massachusetts) will not void a sale, but substantial defects will.[15]  See, e.g., Ram, 234 Cal. App. 4th at 11 ("A sale is not rendered void merely because of minor or technical defects. . . .  A sale is rendered void, though, when the defects are substantial, such as when there has been a failure to give notice of sale to the trustor or to specify the correct default in the notice of default."); Williams v. Kimes, 996 S.W.2d 43, 45 (Mo. 1999) ("In circumstances where the defect is so great that it goes to the very right or power to foreclose, then the non-judicial foreclosure is void and no title is conveyed through the sale.").

But Pinti provides a useful touchpoint here because Massachusetts and other jurisdictions that apply this framework to determine whether a sale is void or voidable would also have likely concluded that the sale in Santiago, in which the mortgagee altogether lacked a power of sale, was void, whereas

---

[15]    The Delapinias would claim that failure to adhere to the terms of the power of sale qualifies was more than a "mere irregularity," but some of these jurisdictions may well conclude that deviation from the advertisement requirements in the power of sale was merely procedural and the sale voidable.  Cf. Ram, 234 Cal. App. 4th 1, 17 (2015) (notice of default executed by individual who was not trustee at that time (and would only become trustee weeks thereafter) was not void, but at most voidable, because notice defect was nonprejudicial).

our court concluded the sale to be voidable.  Compare 137 Hawai'i
at 158, 366 P.3d at 633 ("Where it is determined that the
nonjudicial foreclosure of a property is wrongful, the sale of
the property is invalid and voidable at the election of the
mortgagor[.]") with Rogers v. Barnes, 47 N.E. 602, 604 (Mass.
1897) ("The argument certainly is strong that a bona fide
purchaser for value ought to be protected in his title by what
appears on the record in the registry of deeds, in the absence
of knowledge to the contrary; but the argument is, we think,
stronger that a mortgagor should not be deprived, without his
knowledge, of his equity of redemption, by a sale under a power
contained in a mortgage, which authorizes a sale only in case of
a default, when there has been no default.").  And while the
Delapinias argue that failure to adopt their position would
leave Hawai'i "out of step" with other states, some other
jurisdictions nonetheless appear to come out the other way.[16]
The Supreme Court of Michigan, for instance, explained:

> It was true that failure to advertise according to the
> terms of the power of sale invalidates the sale.  Eubanks
> v. Becton, 158 N.C. 230, 73 S.E. 1009 [(1912)].  But it is
> said that such sale is not absolutely void, but will pass
> the legal title.  Eubanks v. Becton[ ]; Brett v. Davenport,

---

[16]     And by the same token, some of the out-of-state cases cited by
the Delapinias would hold that sales conducted in violation of statute are
void.  See, e.g., Jensen v. Andrews, 163 N.W. 571, 571 (S.D. 1917) (failure
to state the specific hour at which the sale is to take place in the
advertisement, in violation of the state code, "will be void and of no effect
to convey title").  But Mount held that such a sale is voidable.  139 Hawai'i
at 180, 384 P.3d at 1281.

> 151 N.C. [56], 65 S.E. 611 [(1909)].  While such sale would
> be set aside as to the purchaser, a subsequent or remote
> grantee without notice and in good faith takes a good title
> against such defects or irregularities in the sale of which
> he had no notice.

Fox v. Jacobs, 286 N.W. 854, 856 (Mich. 1939) (quoting Hinton v.
Hall, 82 S.E. 847, 848 (N.C. 1914)).[17]

There is therefore precedent from other jurisdictions that supports both positions – void or voidable.  But Hawai'i law has moved unmistakably towards the conclusion that sales pursuant to a wrongful foreclosure are voidable, regardless of whether the violation was statutory or contractual, substantial or a mere irregularity.  This policy protects the interests accrued by innocent purchasers and avoids forfeiture if possible, while deterring the conduct of the party that wrongfully foreclosed through a damages remedy.  Applied to these facts, we hold that wrongful foreclosures in violation of a power of sale are voidable.  Thus, "where the property has passed into the hands of an innocent purchaser for value, rendering the voiding of a foreclosure sale impracticable, an action at law for damages is generally the appropriate remedy."

---

[17]  Fox arose from a statutory violation, but as is clear from the quoted passage, it did not distinguish between a statutory versus contractual violation.  See Kim v. JPMorgan Chase Bank, N.A., 825 N.W.2d 329, 336-37 (Mich. 2012) (describing a lower court's holding that a foreclosure undertaken before the mortgagee acquired his interest in the property was void ab initio to be "contrary to the established precedent of this Court," which has "long held that defective mortgage foreclosures are voidable").

Mount, 139 Hawai'i at 180, 384 P.3d at 1281 (citing Santiago, 137 Hawai'i at 158, 366 P.3d at 633).

## V.   CONCLUSION

For the foregoing reasons, the ICA's March 13, 2020 judgment on appeal is vacated in part, as to defendant MERS, and affirmed as to all other defendants.  The circuit court's April 18, 2017 Final Judgment is vacated, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

<table>
<tr><td>James J. Bickerton<br>(Bridget G. Morgan-Bickerton,<br>Stanley H. Roehrig,<br>John F. Perkin and<br>Van-Alan H. Shima<br>with him on the briefs)<br>for petitioners</td><td>/s/ Mark E. Recktenwald<br><br>/s/ Paula A. Nakayama<br><br>/s/ Sabrina S. McKenna<br><br>/s/ Michael D. Wilson</td></tr>
<tr><td>Jade Lynne Ching (David A.<br>Nakashima and Kanoelani S.<br>Kane with her on the brief)<br>for respondents Nationstar<br>Mortgage LLC and Federal<br>National Mortgage Association</td><td>/s/ Paul B.K. Wong</td></tr>
</table>



Michael C. Bird (Jonathan W.Y. Lai, Thomas J. Berger and Summer H. Kaiawe with him on the brief) for respondents Terry Louise Cole and American Savings Bank, F.S.B.

Patricia J. McHenry and Janjeera S. Hail for respondent Mortgage Electronic Registration Systems, Inc.