**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000060
19-MAY-2025
08:35 AM
Dkt. 76 MO**

NO. CAAP-22-0000060

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER
THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1,
2006, GSAMP TRUST 2006-FM3, Plaintiff-Appellee,
v.
DALE SCOTT WINTERS; DALE SCOTT WINTERS, TRUSTEE UNDER THAT
CERTAIN UNRECORDED REVOCABLE LIVING TRUST DATED AUGUST 30, 1993,
MADE BY DALE SCOTT WINTERS, WITH FULL POWERS TO SELL, MORTGAGE,
LEASE OR OTHERWISE DEAL WITH THE LAND, AS TO AN UNDIVIDED 1/2
INTEREST; and DEPARTMENT OF TAXATION, STATE OF HAWAIʻI,
Defendants-Appellees, and JOHN and MARY DOES 4-10, Defendants
and
EILEEN MARIE WINTERS; EILEEN MARIE WINTERS TRUSTEE UNDER THAT
CERTAIN UNRECORDED REVOCABLE LIVING TRUST DATED AUGUST 30, 1993,
MADE BY EILEEN MARIE WINTERS, WITH FULL POWERS TO SELL,
MORTGAGE, LEASE OR OTHERWISE DEAL WITH THE LAND,
AS TO AN UNDIVIDED 1/2 INTEREST, Defendant-Appellant

———

EILEEN MARIE WINTERS, TRUSTEE UNDER THAT CERTAIN UNRECORDED
REVOCABLE LIVING TRUST DATED AUGUST 30, 1993, MADE BY EILEEN
MARIE WINTERS, WITH FULL POWERS TO SELL, MORTGAGE, LEASE OR
OTHERWISE DEAL WITH THE LAND, AS TO AN UNDIVIDED 1/2 INTEREST,
Defendant/counterclaimant-Appellant,
v.
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER
THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1,
2006, GSAMP TRUST 2006-FM3, Plaintiff/Counterclaim
Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC111000093)

## MEMORANDUM OPINION
(By: Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Eileen Marie **Winters** appeals[1] from the January 18, 2022 **Final Judgment** for **Deutsche Bank** National Trust Company entered by the Circuit Court of the Fifth Circuit.[2] Winters challenges the (1) March 23, 2021 order dismissing counts 2-5 of her counterclaim; and (2) November 19, 2021 order granting Deutsche Bank's motion for summary judgment on its claim for ejectment and dismissing counts 1 and 6 of her counterclaim. We vacate the Final Judgment in part as to Winters individually and as Trustee under that certain unrecorded Revocable Living Trust dated August 30, 1993, made by Eileen Marie Winters, and remand for further proceedings.

## BACKGROUND

Deutsche Bank sued Winters and Dale Scott Winters for ejectment.[3] The complaint was filed on May 25, 2011. Deutsche Bank alleged it had purchased property in Kapaʻa, Kauaʻi in a nonjudicial foreclosure, and sought to eject Winters and Dale Scott Winters from the property. Winters answered the complaint. She didn't assert a counterclaim. Deutsche Bank filed an amended complaint on December 30, 2014. Winters answered the amended complaint and didn't assert a counterclaim.

On October 12, 2020, the circuit court granted Deutsche Bank's motion to identify "Eileen Marie Winters, Trustee under that certain unrecorded Revocable Living Trust dated August 30, 1993" as a defendant. On November 25, 2020, Winters, as trustee, answered and counterclaimed for (1) wrongful nonjudicial foreclosure; (2) unfair and deceptive acts and practices in

---

[1]     Winters' notice of appeal was filed on behalf of Winters individually and as "Trustee under that certain unrecorded Revocable Living Trust dated August 30, 1993, made by Eileen Marie Winters."

[2]     The Honorable Kathleen N.A. Watanabe presided.

[3]     Dale Scott Winters isn't a party to this appeal.

violation of Hawaii Revised Statutes (**HRS**) § 480-2 (**UDAP**); (3) rescission under the federal Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. (**TILA**); (4) violation of the federal Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. (**RESPA**); (5) breach of contract; and (6) quiet title.

Deutsche Bank moved to dismiss counts 2-5 of the counterclaim. The circuit court granted the motion. Deutsche Bank then moved for summary judgment on its claim for ejectment and on counts 1 (wrongful foreclosure) and 6 (quiet title) of Winters' counterclaim. The circuit court granted the motion. The Final Judgment was entered. This appeal followed. Winters contends the circuit court erred by granting Deutsche Bank's motion to dismiss and motion for summary judgment.

## STANDARDS OF REVIEW

We review the circuit court's ruling on the motion to dismiss de novo. Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 256, 428 P.3d 761, 768 (2018). We assume the facts alleged in the counterclaim are true and view them in the light most favorable to Winters to see if they warrant relief under any legal theory. See id. at 256-57, 428 P.3d at 768-69.

We review the grant of summary judgment de novo. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018). Deutsche Bank had the burden to establish the material facts, show there is no genuine issue as to any of them, and explain why it is entitled to a judgment as a matter of law. Id. at 342, 418 P.3d at 1198. A fact is material if it would establish or refute an element of a cause of action or defense. Id. We view the evidence in the light most favorable to Winters. Id.

3

## DISCUSSION

### 1. The circuit court erred by dismissing counterclaim counts 2-5.

Counts 2-5 of Winters' counterclaim alleged UDAP, violation of TILA and RESPA, and breach of contract. It made these allegations which, for this appeal, we deem true and view in the light most favorable to Winters:

Winters created her revocable living trust (**RLT**) in 2002 and transferred title to her Kapaʻa home to herself as trustee. If she were the RLT's beneficiary, she would be the real party in interest to assert claims affecting ownership of and title to her home. Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 265, 799 P.2d 60, 66 (1990) (noting general rule that a trustee having the right sought to be enforced is the real party in interest). She refinanced debt in 2006 and signed a mortgage, but the mortgage did not say she was a trustee.[4] The lender, **Fremont**, failed to deliver two completed and signed notice-of-right-to-cancel documents at the closing, as required under TILA.

In February 2008 Fremont informed Winters her loan was being transferred to **Wells Fargo** and she would receive written instructions for making future payments. Winters called Wells Fargo for payment instructions. She was informed Wells Fargo did not own her loan. Winters called Fremont and was told to make her March 2008 payment over the phone. She did. That happened again in April 2008. In May 2008 Fremont told Winters it was closing and would not accept further payment.

In June 2008 **Litton** informed Winters it was the new loan servicer, Wells Fargo owned her loan, she was in default, and she needed to call to get the payoff amount. Winters left messages at the phone number she was given, but never received a return call. In August 2008 she contacted Litton. She signed a

---

[4] The mortgage identified the "Borrower" as "Dale Scott Winters and Eileen Marie Winters, husband and wife, as tenants by the entirety." We express no opinion about the legal effect of the failure to identify Winters as trustee of her RLT in the mortgage.

**Repayment Plan Agreement** on August 27, 2008, and wired the required $5,000 initial payment. A few days later, Litton informed her it was proceeding with a foreclosure and keeping her initial payment because it was $100 less than required. Litton also force-placed property insurance on the Kapaʻa property and charged the premium to Winters' loan, even though the property was insured. Litton verbally quoted a reinstatement amount, but never verified it in writing. Litton also told Winters to apply for a loan modification, which Winters did by fax.

Meanwhile, Litton's foreclosure counsel sent a letter telling Winters if she wanted to dispute the debt she must do so in writing by December 17, 2008. On December 16, 2008, Winters faxed and mailed a letter disputing the debt and requesting an accounting and the name of the original creditor. She never received the information, in violation of RESPA. In January 2009 Litton informed Winters her house would be sold at auction in March. Winters called Litton's counsel, requested a payoff number and an accounting, and followed up in writing. Litton's counsel told Winters her house was scheduled for auction in two weeks.

By letter dated January 10, 2009, Litton informed Winters her loan could not be modified. In early February 2009 Litton told Winters it had no record of receiving loan modification documents, and she should resubmit. In late February 2009, Litton's counsel gave Winters a written reinstatement amount that was "almost double any previous quote[.]" On June 24, 2009, Winters exercised her TILA rescission right. She received no response. Deutsche Bank proceeded with a nonjudicial foreclosure, sold Winters' house to itself, and recorded a quitclaim deed on August 30, 2010.

Deutsche Bank's motion to dismiss argued that Winters lacked standing to assert the UDAP, TILA, RESPA, and breach of contract claims because they were based on loan documents she signed individually, not as trustee of her RLT. Deutsche Bank alternatively argued the claims were time-barred.

**(a)** Count 2 alleged UDAP. A UDAP claim may only be brought by a consumer. HRS § 480-2(d) (2008). A "consumer" is "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." HRS § 480-1 (2008).

Deutsche Bank argues Winters' RLT is not a "natural person," citing <u>Association of Apartment Owners of Newtown Meadows v. Venture 15, Inc.</u>, 115 Hawaiʻi 232, 252, 167 P.3d 225, 245 (2007) (holding that unincorporated association is not "consumer" under HRS § 480-1). But a trust is not comparable to an unincorporated association; it is an instrument creating a relationship. HRS § 554A-1 (2018, repealed, 2021 Haw. Sess. Laws Act 32, § 9 at 92); HRS § 554D-1104 (Supp. 2021). The counterclaim alleged Winters was the trustee holding title to her Kapaʻa home under her RLT when the loan documents, including the mortgage that encumbered the home, were executed. If she were also the RLT's beneficiary, she would be the real party in interest and have standing to maintain a UDAP claim for unfair or deceptive acts and practices that affected her ownership of and title to her home. <u>Cf.</u> <u>Cochran</u>, 8 Haw. App. at 265, 799 P.2d at 66.

Winters' UDAP claim was not time-barred. A consumer suit under HRS § 480-13(b) (2008) must be filed "within four years after the cause of action accrues[.]" HRS § 480-24 (Supp. 2016). The last unfair or deceptive act or practice alleged in the counterclaim was the recording of Deutsche Bank's quitclaim deed on August 30, 2010. A UDAP action had to have been filed by August 30, 2014. Winters' counterclaim wasn't filed until November 25, 2020. But Winters argues her counterclaim relates back to May 25, 2011, when Deutsche Bank's complaint was filed.

> (a) In the cases enumerated in subsection (b), . . . any . . . statute of limitations, shall apply to a claim stated as a counterclaim against an opposing party in the same manner as if an action thereon had been commenced at the

time when the opposing party commenced the opposing party's action . . . .

(b)    Subsection (a) shall apply if the claim stated as a counterclaim:

. . . .

(2)    Arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

HRS § 657-3 (2016).

Deutsche Bank argues that "counterclaims, as with all other claims, will relate back only if they arose out of a situation previously described in timely pleadings." Mauian Hotel, Inc. v. Maui Pineapple Co., 52 Haw. 563, 567, 481 P.2d 310, 313–14 (1971) (applying Hawaiʻi Rules of Civil Procedure Rule 15(c)). Deutsche Bank's complaint sought ejectment. But it alleged that Deutsche Bank sold Winters' property to itself in a nonjudicial foreclosure, and that Winters and Dale Scott Winters were "remaining on the property as trespassers and/or uninvited guests and lessees." Thus, Winters' mortgage loan, alleged default, and the nonjudicial foreclosure were "situation[s] previously described" in, and the UDAP counterclaim "ar[ose] out of the transaction or occurrence that is the subject matter" of, Deutsche Bank's complaint.

It was reasonably foreseeable that Winters would defend against the ejectment claim by challenging the validity of the nonjudicial foreclosure. Deutsche Bank realized this; its motion for summary judgment stated it "commenced this action in May 2011 to confirm the validity of the nonjudicial foreclosure and obtain a writ of ejectment." The complaint was filed before Winters' UDAP counterclaim, which relates back, became time-barred. The circuit court erred by dismissing count 2.

**(b)** Count 3 alleged TILA violations. Deutsche Bank doesn't argue Winters lacked standing; it argues only that her TILA claim was time-barred. TILA does not contain its own statute of limitations. "In the absence of a controlling federal limitations period, the general rule is that a state limitations

7

period for an analogous cause of action is borrowed and applied to the federal claim[.]"  Cnty. of Oneida v. Oneida Indian Nation, 470 U.S. 226, 240 (1985).

HRS § 657-1(1), the six-year breach-of-contract statute of limitations, is the most analogous.  Cf. Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1099 (9th Cir. 2018) ("In Washington, the state's six-year contract statute of limitations is the most analogous statute.").  The counterclaim alleged Winters exercised her TILA rescission right on June 24, 2009, but the nonjudicial foreclosure proceeded.  Deutsche Bank's complaint was filed before Winters' TILA rescission claim became time-barred.  The circuit court erred by dismissing count 3.

**(c)**  Count 4 alleged RESPA violations.  Deutsche Bank argues the RLT was not a "borrower" authorized to sue under RESPA because Winters signed the loan documents individually, not as trustee.  12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure[.]").

Deutsche Bank relies on Keen v. Helson, 930 F.3d 799, 802 (6th Cir. 2019).  Keen is inapposite.  There, Tara and Nathan Keen bought a house.  Both signed the mortgage, but only Nathan signed the note.  Tara got title to the house when they divorced. Nathan died.  The loan servicer foreclosed.  Tara sued the loan servicer for violating RESPA.  The federal district court held that Tara was not a "borrower" under RESPA because she was never personally obligated under the note.  Tara appealed.  The Sixth Circuit affirmed, holding that a "'borrower' is someone who is personally obligated on a loan — i.e., someone who is actually borrowing money.  Tara Keen does not fit that description, so she does not have a cause of action under RESPA."  Id. at 800.

Here, Winters was the borrower.  Her counterclaim alleged she owned her home as trustee of her RLT when she signed the note.  She had standing as RLT trustee to assert the RESPA violation on behalf of herself as the real party in interest. Cf. Cochran, 8 Haw. App. at 265, 799 P.2d at 66.

8

RESPA has a three-year statute of limitations for violations involving servicing a mortgage loan. 12 U.S.C. § 2614. The counterclaim alleged RESPA violations in June, October, and December 2008. Deutsche Bank's complaint was filed before the earliest RESPA claim became time-barred. The circuit court erred by dismissing count 4.

**(d)** Count 5 alleged breach of the Repayment Plan Agreement. Deutsche Bank argues the RLT was not a party to the agreement because it was not a signatory. Winters signed the Repayment Plan Agreement as the real party in interest under the RLT. Deutsche Bank does not argue the breach of contract claim was time-barred. The circuit court erred by dismissing count 5.

**2. The circuit court erred by granting summary judgment on Deutsche Bank's ejectment claim.**

To prevail on its ejectment claim, Deutsche Bank had to prove it had "title to and right of possession of" the Kapaʻa property. Kondaur Cap. Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 241, 361 P.3d 454, 468 (2015). In Kondaur the supreme court noted: "Because the title to the Property deeded by RLP to Kondaur derives from a non-judicial foreclosure sale of the Property, the strength and validity of Kondaur's title is unavoidably intertwined with the validity of the foreclosure sale." Id. at 241, 361 P.3d at 468. Deutsche Bank submitted the Adjustable Rate Note, the Mortgage, and recorded copies of the Mortgagee's Affidavit of Foreclosure Under Power of Sale and Quitclaim Deed. The burden then shifted to Winters to show there were genuine issues of material fact precluding summary judgment.

The Mortgage provided:

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance**. . . . If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

Winters submitted a 15-page declaration explaining in more detail the facts alleged in her counterclaim. She also submitted copies of correspondence she received from Litton, the Repayment Plan Agreement, and $5,000 check to "Litton Mortgage," a Litton billing statement, correspondence with Litton and its foreclosure counsel, her December 16, 2008 letter disputing the debt, Litton's call logs, another 2-page declaration, and her June 24, 2009 TILA rescission letter.

Viewed in the light most favorable to Winters, her evidence raised genuine issues of material fact about Fremont's, Litton's, and Deutsche Bank's breach of paragraph 20 of the Mortgage; violation of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.33 (concerning mortgage servicing transfers); whether Litton and Deutsche Bank breached the Repayment Plan Agreement; whether Litton and Deutsche Bank violated 12 U.S.C. § 2605 (concerning force-placed insurance); and whether Litton and Deutsche Bank violated former HRS § 667-5(c) (Supp. 2008) (concerning right to cure a default). If proven, the breach and violations could invalidate the foreclosure, and thus should have precluded summary judgment for Deutsche Bank on its ejectment claim.

3. **The circuit court erred by granting summary judgment on Winters' wrongful foreclosure counterclaim.**

Deutsche Bank argues that Winters' wrongful foreclosure claim lacked merit because she failed to establish actual damages under the holding of Lima v. Deutsche Bank National Trust Company, 149 Hawaiʻi 457, 494 P.3d 1190 (2021). In Lima the supreme court addressed this question, certified from the federal district court:

> When (a) *a borrower has indisputably defaulted on a mortgage* for real property, (b) *a lender* has conducted a nonjudicial foreclosure sale but *has not strictly complied with the requirements governing such sales*, and (c) the borrower sues the lender over that noncompliance after the foreclosure sale and, if the property was purchased at foreclosure by the lender, *after any subsequent sale to a third-party purchaser*, may the borrower establish the requisite harm for

> liability purposes under the law of wrongful foreclosure and/or section 480-2 of Hawaiʻi Revised Statutes by demonstrating the loss of title, possession, and/or investments in the property without regard to the effect of the mortgage on those items?

Id. at 460, 494 P.3d at 1193 (emphasis added). The supreme court held that "a borrower with no pre-foreclosure rights in property except as encumbered by a mortgage bears the burden of accounting for the effect of the mortgage in establishing the element of harm." Id. at 469, 494 P.3d at 1202.

Winters argues that Lima is distinguishable because there, the borrowers had no pre-foreclosure rights in property except as encumbered by a mortgage, while Winters contends "she absolutely had pre-foreclosure rights in the property, including the right to make monthly payments towards her debt under the mortgage loan, which she absolutely could do." Her opening brief asserts: "She is not asking for a free house, release of mortgage, or to be excused from her obligations under the mortgage loan contract. Instead, she is asking that her rights under the parties' contract be upheld."

A supreme court case decided after briefing was completed lends credence to her argument. In Llanes v. Bank of Am., N.A., 154 Hawaiʻi 423, 555 P.3d 110 (2024), several borrowers sued their lenders for nonjudicial foreclosures that didn't comply with statutory requirements. The foreclosed properties were sold to third parties. Id. at 426, 555 P.3d at 113. Discussing Lima, the supreme court explained:

> Accounting for the effect of the mortgage in establishing the element of harm means . . . factoring in the mortgage's value[.] This reading comports with the general rule in measuring damages, which is to give a sum of money to the person wronged which as nearly as possible, will restore him or her to the position he or she would be in if the wrong had not been committed. . . .
>
> Moreover, under Borrowers' own theory, they did not walk away empty-handed — their initial "invested debt" was returned to them on the backend when it was forgiven. The satisfaction of Borrowers' mortgage debts, which they do not contest here, represents a return of their "investment" on their own theory. If the "invested debt" was theirs on the front end, it was also theirs on the backend.

11

Id. at 432-33, 555 P.3d at 119-20 (cleaned up).

The supreme court contrasted the facts in Llanes and Lima with those in Santiago v. Tanaka, 137 Hawaiʻi 137, 366 P.3d 612 (2016). There, the Santiagos bought a tavern from Tanaka with a purchase money mortgage that did not contain a power of sale. Tanaka had misrepresented the tavern's sewer costs during negotiations. The Santiagos initially withheld payments from Tanaka after discovering the sewer fees, but later cured their default. Four months later, Tanaka sold the tavern to herself in a nonjudicial foreclosure, then resold it to a third party. In Llanes the supreme court summarized its Santiago decision:

> We held that Tanaka improperly foreclosed upon the Santiagos' tavern because (1) her misrepresentations and non-disclosures induced the Santiagos to purchase the tavern, (2) the mortgage altogether lacked a power of sale, and (3) the Santiagos cured their default. Because the tavern could not be returned to the Santiagos, having been resold, we concluded that they were entitled to out-of-pocket losses of $1,412,790.79 as a result of the seller's wrongful foreclosure of the mortgage and subsequent sale of the tavern.
>
> . . . .
>
> Here [in Llanes], Borrowers were in different pre-foreclosure positions than were the Santiagos for two reasons. First, Lender had the right to foreclose upon their properties under powers of sale. Thus, their pre-tort position still includes a looming foreclosure. Second, Borrowers were not current on their mortgages. Thus, to the extent that they were improper at all, the foreclosures at issue here appear from the record to have been merely procedurally defective. Indeed, the circuit court noted in its summary judgment order that Borrowers claim that Lender conducted the foreclosures in a wrongful manner by not complying with the technical requirements of the nonjudicial foreclosure statute and power of sale, instead of claiming that the foreclosures were wrongful because they should not have happened at all.

Llanes, 154 Hawaiʻi at 430, 431, 555 P.3d at 117, 118 (cleaned up).

Here, Winters' declaration — which we must view in the light most favorable to her — showed that the nonjudicial foreclosure was not "looming." It would not have happened but for Fremont's, Litton's, and Deutsche Bank's alleged breach of

12

paragraph 20 of the Mortgage, statutory violations, and alleged breach of the Repayment Plan Agreement.  Winters' declaration states that she tried to timely pay what she was told she owed, even incurring pay-by-phone and Western Union fees to do so, and had "the ability to pay the reinstatement charges if we could ever get an exact amount in writing."  Thus, as in Llanes, assuming Winters' allegations are true "the foreclosures were wrongful because they should not have happened at all."  154 Hawaiʻi at 431, 555 P.3d at 118.

In addition, in Llanes and Lima, the mortgaged properties had been sold to good-faith purchasers.  The foreclosure sales, even if wrongful, could not be set aside and the borrowers could not recover their properties.  Wilmington Sav. Fund Soc'y, FSB v. Domingo, 155 Hawaiʻi 1, 10, 556 P.3d 347, 356 (2024) (noting that "vacatur or reversal of a foreclosure judgment cannot affect title conveyed to the good faith purchaser").  But the borrowers' loan debts were also discharged. That is why they had to account "for the effect of the mortgage in establishing the element of harm."  Lima, 149 Hawaiʻi at 469, 494 P.3d at 1202.

Here, the record does not show that Deutsche Bank sold the Kapaʻa property to a third party.  If Winters succeeded in invalidating the foreclosure, she could regain the property. Llanes, 154 Hawaiʻi at 434, 555 P.3d at 121.  She would still be liable to repay her mortgage loan, but she would be entitled to some recovery under "the general rule in measuring damages, which is to give a sum of money to the person wronged which as nearly as possible, will restore . . . her to the position . . . she would be in if the wrong had not been committed."  Id. at 432, 555 P.3d at 119 (brackets omitted).  The circuit court erred by granting summary judgment on Winters' wrongful foreclosure counterclaim.

### 4.     The circuit court erred by granting summary judgment on Winters' quiet title claim.

Deutsche Bank argued to the circuit court that Winters had to allege she paid, or tendered, what she owed on her mortgage loan to maintain her quiet title counterclaim, citing Delapinia v. Nationstar Mortg. LLC, 146 Hawaiʻi 218, 228, 458 P.3d 929, 939 (App. 2020) (**Delapinia I**), vacated in part by Delapinia v. Nationstar Mortg. LLC, 150 Hawaiʻi 91, 497 P.3d 106 (2021) (**Delapinia II**).

A week before the hearing on Deutsche Bank's motion for summary judgment, the supreme court decided Delapinia II. There, it "decline[d] to opine whether the tender rule applies in Hawaiʻi wrongful foreclosure cases generally." 150 Hawaiʻi at 92, 497 P.3d at 107. It then held "that the tender rule is not an absolute bar to a quiet title action against a party to whom the plaintiff is not indebted[.]" Id. at 100, 497 P.3d at 115.[5] Winters cited Delapinia II to the circuit court in a supplemental memorandum the day the supreme court's opinion was filed. Deutsche Bank's reply memorandum did not argue why the tender rule should be applied despite Delapinia II. Nor does its answering brief.

A quiet title action "may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim." HRS § 669-1(a) (2016). "Hawaiʻi case law explicitly provides that a plaintiff seeking relief under HRS Chapter 669 must demonstrate that he or she has title to the land, either via paper title or adverse possession, and that he or she has superior title compared to the defendant." Ibbetson v. Kaiawe, 143 Hawaiʻi 1, 17, 422 P.3d 1, 17 (2018). Deutsche Bank incorrectly argues that Winters' quiet title claim "was premised solely upon alleged defects in the

---

[5]     The party who asserted the tender rule in Delapina II was the mortgagee of the third party who had purchased the property in an allegedly wrongful nonjudicial foreclosure.

foreclosure process." Winters actually claimed her default was caused by Fremont's, Litton's, and Deutsche Bank's breach of paragraph 20 of the Mortgage, statutory violations, and Litton's and Deutsche Bank's breach of the Repayment Plan Agreement, and the nonjudicial foreclosure was wrongful because it should not have happened. Deutsche Bank did not show why the tender rule should apply under these circumstances. On this record, the circuit court erred by granting summary judgment for Deutsche Bank on Winters' quiet title claim.

## CONCLUSION

We vacate the circuit court's March 23, 2021 order granting Deutsche Bank's motion for partial dismissal of Winters' counterclaim; November 19, 2021 order granting Deutsche Bank's motion for summary judgment; and January 18, 2022 Final Judgment, all as against Winters individually and as Trustee under that certain unrecorded Revocable Living Trust dated August 30, 1993, made by Eileen Marie Winters, and remand for further proceedings consistent with this memorandum opinion.

DATED: Honolulu, Hawaiʻi, May 19, 2025.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge